Thomas E. Loeser (SBN 202724)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
toml@hbsslaw.com

Peter B. Fredman (SBN 189097)
**LAW OFFICE OF PETER FREDMAN PC**
125 University Ave, Suite 102
Berkeley, CA 94710
Tel: (510) 868-2626
Fax: (510) 868-2627
peter@peterfredmanlaw.com

*Attorney for Plaintiffs LOWELL and GINA SMITH,*
*for themselves and persons similarly situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LOWELL SMITH, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>FLAGSTAR BANK, FSB,<br><br>                    Defendant. | No.  3:18-cv-05131-WHA (DMR)<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS<br><br>Date: January 31, 2019<br>Time: 8:00 a.m.<br>Place: Courtroom 12<br><br>Complaint Filed: August 22, 2018<br>FAC Filed: October 19, 2018<br><br>Honorable Judge William H. Alsup |

1085258 V1

1

**TABLE OF CONTENTS**

2                                                                          <u>Page</u>

3   I.      INTRODUCTION ................................................................................................1

4   II.     SUMMARY OF ARGUMENT .........................................................................2

5   III.    BACKGROUND .................................................................................................3

6           A.      The Smiths' DoT Contract Obliged Their Non-Bank Lender To
                    Comply With Section 2954.8 As Applicable Law Required ......................3

7           B.      The Dodd-Frank Act Ended HOLA Field Preemption Effective
                    July 21, 2011 ...............................................................................................4

8

9                   1.      Dodd-Frank amended the NBA and HOLA to *clarify* that
                            they did not authorize preemption of state laws that did not
10                          prevent or significantly interfere with banking. ...............................4

11                  2.      The purpose of the delayed effective date was to permit
                            regulated entities to adjust their behavior before the
12                          amended rules took effect...................................................................6

13                  3.      Dodd-Frank included a general provision to preserve the
                            stability of contracts that national banks entered into before
14                          its enactment date. .............................................................................7

15  IV.     SECTION 2954.8 DOES NOT PREEMPT THE SMITHS' CLAIMS................................7

16          A.      Flagstar Cannot Demonstrate That Congress Intended That The
                    Old HOLA Field Preemption Regime Should Apply To This Case ..........7

17          B.      Congress Plainly Intended To End The Old HOLA Field
                    Preemption Regime Upon The Dodd-Frank Effective Date .....................8

18

19          C.      Flagstar Implicitly Relies On A Dodd-Frank Contract Preservation
                    Provision That Plainly Does Not Apply To The Smiths ...........................9

20          D.      Flagstar's Theory Fails Because Congress Did Not Intend To
                    Preserve HOLA Field Preemption Of The Consumer Protection
21                  Claims Raised In This Case ....................................................................10

22  V.      CONCLUSION ................................................................................................12

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ABKCO Music, Inc. v. LaVere,*
    217 F.3d 684 (9th Cir. 2000) ................................................................................................. 9

*Aldana v. Bank of Am.,*
    2014 WL 6750276 (C.D. Cal. Nov. 26, 2014) ..................................................................... 10

*Barnett Bank of Marion Cty. v. Nelson, Fla. Ins. Comm'r, et al.,*
    517 U.S. 25 (1996) ............................................................................................................ 5, 8

*Beverly Cmty. Hosp. Ass'n v. Belshe,*
    132 F.3d 1259 (9th Cir. 1997) ............................................................................................... 9

*Cline v. Bank of Am.,*
    823 F. Supp. 2d 387 (S.D. W. Va.2011) ............................................................................. 11

*Copeland-Turner v. Wells Fargo Bank,*
    800 F. Supp. 2d 1132 (D. Or. 2011) .................................................................................... 10

*Deschaine v. IndyMac Mortg. Servs.,*
    2014 WL 281112 (E.D. Cal. Jan. 23, 2014) ........................................................................ 10

*Higley v. Flagstar Bank,*
    910 F. Supp. 2d 1249 (D. Or. 2012) .................................................................................... 10

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994) .................................................................................................... 2, 3, 8

*Lusnak v. Bank of Am.,*
    883 F.3d 1185 (9th Cir. 2018) ..................................................................................... *passim*

*Meyer v. One W. Bank,*
    91 F. Supp. 3d 1177 (C.D. Cal. 2015) ............................................................................. 9, 10

*Molosky v. Wash. Mut. Inc.,*
    664 F.3d 109 (6th Cir. 2011) ................................................................................................. 9

*McShannock v. JP Morgan Chase Bank N.A.,*
    2018 WL 643912 (N.D. Cal. Dec. 7, 2018) ......................................................................... 10

*In re Pryor,*
    479 B.R. 694 (Bankr. E.D.N.C. 2012) ......................................................................... 8, 9, 11

*Quintero v. Wells Fargo Bank,*
    2014 WL 202755 (N.D. Cal. Jan. 17, 2014) .................................................................. 10, 11

*Smith v. Flagstar Bank, FSB*,
  2018 WL 3995922 (N.D. Cal. Aug. 21, 2018) ............................................ 1, 2, 3

*Sun v. Wells Fargo Bank, Nat'l Assoc.*,
  2014 WL 1245299 (N.D. Cal. Jan. 23, 2014) ................................................ 10

*United States v. Donaghe*,
  50 F.3d 608 (9th Cir.1994) ............................................................ 3, 9

## STATUTES

12 U.S.C. § 25b ...................................................................... 2, 5

12 U.S.C. §§ 1463-1464 ................................................................ 5

12 U.S.C. § 1465 ............................................................... 2, 5, 8, 11

12 U.S.C. § 5411 ...................................................................... 6

12 U.S.C. §§ 5411-16 .................................................................. 6

12 U.S.C. § 5481 ...................................................................... 6

12 U.S.C. § 5551 ...................................................................... 6

12 U.S.C. § 5553 .................................................................. 3, 7, 9

12 U.S.C. § 5582 ...................................................................... 6

Dodd-Frank Wall Street Reform and Consumer Protection Act,
  Pub. L. No. 111-203, 124 Stat. 1376 (2010) ............................................ 1

## OTHER AUTHORITIES

12 C.F.R. § 560.2 ..................................................................... 5

76 Fed. Reg. 43,549, 43,559 (July 21, 2011) .......................................... 6

S. Rep. No. 111-176 ............................................................... 4, 5, 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

Defendant Flagstar Bank, FSB ("Flagstar") has clarified that it does not seek dismissal of Plaintiff William Kivett's Unfair Competition Law ("UCL") claim because his mortgage originated *after* the Dodd-Frank[1] effective date of July 21, 2011.[2]  Plaintiffs agree that Kivett's deed of trust ("DoT") does not support a breach of contract claim. **Therefore, the sole question presented in Flagstar's motion is whether Plaintiffs Lowell and Gina Smith's (the "Smiths'") UCL and breach of contract claims based on Flagstar's alleged violations of section 2954.8(a) of the California Civil Code ("section 2954.8")  are preempted by the Home Owners' Loan Act ("HOLA")**.

Flagstar distinguishes the Smiths from Kivett because their mortgage originated (and/or because Flagstar began servicing it) *prior to* the Dodd-Frank effective date. Flagstar fails to mention, however, that *this Court* already decided this exact issue in the Smiths' favor in *Smith v. Flagstar Bank, FSB*, Case No. 18-02350 WHA ("*Flagstar I*"), as follows:[3]

> Defendant's argument … cannot be squared with [Dodd-Frank] which effectively dissolved the [Office of Thrift Supervision] (OTS)… As part of the reform, agencies such as the OTS which previously regulated federal thrifts became part of the Office of the Comptroller of the Currency (OCC)…
>
> In light of this reform, [the Smiths] correctly rely on *Lusnak* ... the standard that applied to the OCC articulated in *Lusnak* applies to the instant case since federal thrifts such as defendant are no longer governed by the OTS.
>
> Defendant attempts to circumvent this problem by arguing that the Dodd-Frank Act is not retroactive…
>
> [But the Smiths] allege that during the entire time defendant serviced plaintiffs' loan from 2011 to 2015, no interest was ever paid on the escrow account. This would mean that defendant's alleged failure to pay interest violated Section 2954.8(a) after the effective date of the Dodd-Frank Act. *Therefore, even if missed interest accruals before the effective date enjoyed the same field preemption standard under the old*

---

[1] "Dodd-Frank" or the "Dodd-Frank Act" means the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010).

[2] This clarification is per meet and confer discussions on December 4, 2018.

[3] After rejecting Flagstar's preemption argument, this Court dismissed *Flagstar I* based on the Smiths' failure to satisfy a notice-and-cure provision prior to filing suit. The Smiths cured the defect before filing the present action.

> *regime, all payments due after the effective date should have been paid.*
> *That the deed of trust originated in the earlier time frame cannot change*
> *the fact that interest payments fell due after the new regime took hold.*
> Therefore, defendant's motion to dismiss on the grounds that the HOLA
> preempts [California Civil Code] Section 2954.8(a) is **DENIED.**

*Id.*, Dkt. No. 34 at 3-4, 2018 WL 3995922, at *2-3 (N.D. Cal Aug. 21, 2018) (italics added). This

Court's decision in *Flagstar I* is correct and supported by the law it cites. Flagstar raises no

arguments based on new facts or new law. It essentially seeks reconsideration, making no reference

to the decision this Court has already made on this exact issue. For the reasons set forth by the Court

in *Flagstar I* and set forth below, Flagstar's motion should be denied.

## II.    SUMMARY OF ARGUMENT

Flagstar's argument fails for the reasons stated in *Flagstar I*. The Ninth Circuit's decision in

*Lusnak v. Bank of America*, 883 F.3d 1185 (9th Cir. 2018), cert. denied, --- S.Ct. ---, 2018 WL

4006331 (Nov. 19, 2018) ("*Lusnak*"), establishes that federal banking law does not preempt the

Smiths' claims because section 2954.8 does not "prevent or significantly interfere with" banking

powers. *See id.* at 1194. Flagstar's argument that federal thrifts still enjoy the old HOLA field

preemption scheme established by OTS at 12 C.F.R. § 560.2 fails because the Dodd-Frank Act

dissolved the OTS, transferred its authority to the OCC, and *clarified* that the HOLA preemption

standard was the same as that applicable to national banks. *See Lusnak*, 883 F.3d at 1189, 1196, n.8;

12 U.S.C. § 25b; 12 U.S.C. § 1465. Flagstar's argument thus defies the Congressional instruction

that, effective July 21, 2011, "[a]ny determination by a court … regarding the relation of State law to

a provision of [HOLA] or any regulation or order prescribed under [HOLA] *shall* be made in

accordance with the laws and legal standards applicable to national banks regarding the preemption

of State law." 12 U.S.C. § 1465(a) (emphasis added).

As before, Flagstar attempts to characterize its argument as one against retroactivity. As this

Court recognized in *Flagstar I*, however, no true retroactivity issue exists because this case addresses

Flagstar's conduct *after* Dodd-Frank's effective date of July 21, 2011. *See Flagstar I*, 2018 WL

3995922, at *3; *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994). The "principle that the legal

effect of conduct should ordinarily be assessed under the law that existed when the conduct took

place has timeless and universal appeal." *Landgraf*, 511 U.S. at 265 (quoting *Kaiser Aluminum &*

1   *Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring). Moreover, there is no

2   retroactivity concern in the first instance because where, as here, "an amendment is deemed

3   clarifying rather than substantive, it is applied retroactively." *United States v. Donaghe*, 50 F.3d 608,

4   612 (9th Cir. 1994). The proper analysis ends there: "even if missed interest accruals before the

5   effective date enjoyed the same field preemption standard under the old regime, all payments due

6   after the effective date should have been paid." *Flagstar I*, 2018 WL 3995922, at *3.

7       Further, deeper analysis reveals that Flagstar's argument it is not really grounded in statutory

8   retroactivity at all. Rather, the root of the argument, and the cases upon which it relies, is a Dodd-

9   Frank provision—section 1043 of Title X, now codified as 12 U.S.C. § 5553 ("section 5553")—that

10  affirmatively preserves prior regulatory regimes with respect to contracts "entered into on or before

11  July 21, 2010." 12 U.S.C. § 5553.[4] Flagstar obfuscates because no such contract exists in this case.

12  Although the Smiths' DoT originated prior to July 21, 2010, Flagstar is not a party to that contract.

13      In any event, there is no contractual right for section 5553 to preserve here. The Smiths' DoT

14  does not endow the lender with a contractual right *not to comply* with section 2954.8. To the

15  contrary, the Smiths' DoT expressly provides for the payment of interest on escrow account funds if

16  "Applicable Law requires."[5] The HOLA field preemption that Flagstar enjoyed until July 21, 2011

17  preempted the state law, not the contract itself.

### III.    BACKGROUND

**A.    The Smiths' DoT Contract Obliged Their Non-Bank Lender To Comply With Section 2954.8 As Applicable Law Required**

The Smiths' mortgage was originated in 2004 by Wholesale America Mortgage, Inc. ("WA Mortgage"). *See id*. at Definitions (C). It is the only "Lender" defined in the DoT. *See id.* Section 3 of the DoT provides for the establishment of an escrow impound account to secure payment of items such as property taxes and insurance. *See id.* at § 3. The same provision requires that interest be paid

---

[4] Of course, there would be no reason for section 5553 if Congress did not intend the amendments to HOLA to otherwise take immediate effect.

[5] Defendant Flagstar Bank, FSB's Request For Judicial Notice in Support of Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to F.R.C.P. 12(B)(6) (Dkt. No. 26-1) ("RJN"), Ex. B at § 3.

on the funds held in the escrow account if "Applicable Law requires interest to be paid on the Funds." *Id.*

As WA Mortgage, a non-bank, had no preemption claim, the agreement it formed with the Plaintiffs at origination presumably required compliance with section 2954.8.  *Id.* at Definitions (J). Similarly, the next known loan servicer, Carrington Mortgage Services, Inc. ("Carrington"), having no preemption claim, was also required to comply with section 2954.8. *See* RJN, Ex. C.[6] From April 19, 2011 through August 4, 2015, while Flagstar was servicing Plaintiffs' loan, it did not pay interest on their escrow funds. *See* First Amended Complaint for (1) Violation of Unfair Competition Law (Cal. Bus. And Prof. Code § 17200 *et seq.*) and 2) Breach of Contract (Dkt. No. 16) ("FAC"), ¶ 17.

**B.    The Dodd-Frank Act Ended HOLA Field Preemption Effective July 21, 2011**

**1.    Dodd-Frank amended the NBA and HOLA to *clarify* that they did not authorize preemption of state laws that did not prevent or significantly interfere with banking.**

On July 21, 2010, "Congress enacted Dodd–Frank in response to a 'financial crisis that nearly crippled the U.S. economy.'" *Lusnak*, 883 F.3d at 1189 (quoting S. Rep. No. 111-176, at 2 (2010)). It "brought about a 'sea change' in the law, affecting nearly every corner of the nation's financial markets." *Id.* "One of Congress's main goals in this sweeping legislation was to prevent another mortgage crisis[.]" *Id.*

The legislative history explains that Congress took action against the OTS, OCC, and their purported preemptive regulations because they had "actively created an environment where abusive mortgage lending could flourish without State controls." S. Rep. No. 111-176 at 17; *see Lusnak*, 883 F.3d. at 1189. As the Senate Report explained:

> Unfortunately, rather than supporting these anti-predatory lending laws, federal regulators preempted them. In 1996, the OTS preempted all State lending laws. The OCC promulgated a rule in 2004 that, likewise, exempted all national banks from State lending laws, including the anti-predatory lending laws. At a hearing on the OCC's preemption rule, Comptroller Hawke acknowledged, in response to questioning from Senator Sarbanes, that one reason Hawke issued the

---

[6] Flagstar appears to contend that it serviced the loan from shortly after origination for some time prior to Carrington taking over the servicing. This is not a proper subject for judicial notice. It is also irrelevant. Plaintiffs do not contend that Flagstar was obliged to comply with section 2954.8 to the extent it serviced the Smiths' loan prior to the Dodd-Frank effective date.

preemption rule was to attract additional charters, which helps to bolster the budget of the OCC.

S. Rep. No. 111-176 at 16.

The relevant parts of Dodd-Frank are in Title X, "BUREAU OF CONSUMER FINANCIAL PROTECTION," Subtitle D, "Preservation of State Law."

Section 1044 therein, "STATE LAW PREEMPTION STANDARDS FOR NATIONAL BANKS AND SUBSIDIARIES CLARIFIED," amended the NBA to provide that the term "national bank" includes "any bank organized under the laws of the United States," and that they are all subject to the conflict preemption standard established in *Barnett Bank* in 1996. *See* 12 U.S.C. § 25b; *Lusnak*, 883 F.3d at 1191-92. As so "clarified," the NBA provides that "state consumer financial law is preempted, only if [the law] 'prevents or significantly interferes with the exercise by the national bank of its power.'" *Lusnak*, 883 F.3d at 1193 (emphasis and citation omitted).

Section 1046, "STATE LAW PREEMPTION STANDARDS FOR FEDERAL SAVINGS ASSOCIATIONS AND SUBSIDIARIES CLARIFIED," amended HOLA to add the following provisions:

> Any determination by a court … regarding the relation of State law to a provision of [HOLA] or any regulation or order prescribed under [HOLA] *shall* be made in accordance with the laws and legal standards applicable to national banks regarding the preemption of State law.

12 U.S.C. § 1465(a) (emphasis added).

> Notwithstanding the authorities granted under sections 1463 and 1464 of this title, *this chapter does not occupy the field* in any area of State law.[7]

12 U.S.C. § 1465(b) (emphasis added).

The legislative history reiterates that Congress intended that sections 1044 and 1046 be construed in accordance with their titles as *clarifications* of existing law:

> Section 1044 amends the National Bank Act *to clarify* the preemption standard relating to State consumer financial laws as applied to

---

[7] In 1996, OTS relied on 12 U.S.C. §§ 1463-1464 when it issued the regulation that purported to occupy the field. *See* 12 C.F.R. § 560.2 ("Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations … OTS hereby occupies the entire field of lending regulation for federal savings associations.").

1
2
3
4
5

> national banks. This section does not alter the preemption standards for
> State laws of general applicability to business conduct. State consumer
> financial laws are defined as laws that directly and specifically regulate
> the manner, content, or terms and conditions of financial transactions
> or accounts with respect to consumers. The standard for preempting
> State consumer financial law would return to what it had been for
> decades, those recognized by the Supreme Court in *Barnett Bank v.
> Nelson*, 517 U.S. 25 (1996 *Barnett*), undoing broader standards
> adopted by rules, orders, and interpretations issued by the OCC in
> 2004.

6

> \*\*\*

7
8

> Section 1046 amends the Home Owners' Loan Act *to clarify* that State
> law preemption standards for Federal savings associations and their
> subsidiaries shall be made in accordance with the standard applicable
> to national banks.

9
10

S. Rep. No. 111-176, at 175-76 (emphasis added).

11

> **2.    The purpose of the delayed effective date was to permit regulated entities to
> adjust their behavior before the amended rules took effect.**

12

Section 1048 provided that Subtitle D shall become "effective on the designated transfer

13

date." *Id.*; *see* 12 U.S.C. § 5551 note. The "transfer date" was eventually set as "1 year after [the date

14

of enactment of Dodd-Frank]." 12 U.S.C. § 5411; *see also* 12 U.S.C. § 5481(9), 12 U.S.C. § 5582.

15

This transfer date corresponded with the anticipated transfer of the functions, powers and duties of

16

OTS to OCC, followed by the permanent abolishment of the OTS to occur 90 days later. *See* 12

17

U.S.C. §§ 5411-16.

18

The OCC rulemaking commentary explains that the "purpose of a delayed effective date

19

[was] to permit regulated entities to adjust their behavior before the final rule takes effect." Office of

20

Thrift Supervision Integration; Dodd-Frank Act Implementation, 76 Fed. Reg. 43,549, 43,559 (July

21

21, 2011).

22
23
24
25

> [Dodd-Frank] precludes preemption of state law for national bank
> subsidiaries, agents and affiliates … [and] … changes the preemption
> standards applicable to Federal savings associations to conform to
> those applicable to national banks … [and] … specifically provides
> that, as of the transfer date, determinations by a court … under
> [HOLA] … must be made in accordance with the laws and legal
> standards applicable to national banks regarding the application of
> state law.

26

*Id.* at 43,551.

27
28

1

> Specifically with regard to the preemption …, it is important for the industry to have guidance by the effective date of the relevant Dodd-Frank Act amendments, July 21, 2011.

2

3    *Id.* at 43,560.

4    **3.    Dodd-Frank included a general provision to preserve the stability of contracts that national banks entered into before its enactment date.**

5

6    Dodd-Frank Title X also included a general provision, "PRESERVATION OF EXISTING

7    CONTRACTS," that provides as follows:

8

> This title [*i.e.*, Title X] and regulations, orders, guidance, and interpretations prescribed, issued, or established by the [CFPB], shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the [OCC] or [OTS] regarding the applicability of State law under Federal banking law to any contract entered into on or before July 21, 2010, by national banks, Federal savings associations, or subsidiaries thereof that are regulated and supervised by the [OCC] or [OTS], respectively.

9

10

11

12    12 U.S.C. § 5553.[8]

13

14    The legislative history explains that this section was "intended to provide stability to existing

15    contracts." S. Rep. No. 111-176, at 175. To that end, its intent was that Title X "not be construed to

16    affect the applicability of any rule, order, guidance or interpretation by the OCC or OTS regarding

17    the preemption of State law by a Federal banking law to any contract entered into by banks, thrifts,

18    or affiliates and subsidiaries thereof, prior to the date of enactment of the CFP Act." *Id.*

19    **IV.    SECTION 2954.8 DOES NOT PREEMPT THE SMITHS' CLAIMS**

20    **A.    Flagstar Cannot Demonstrate That Congress Intended That The Old HOLA Field Preemption Regime Should Apply To This Case**

21    *Lusnak* explains that, "because this case involves state regulation of consumer credit,

22    [Flagstar] must affirmatively demonstrate that Congress intended to preclude states from enforcing

23    their escrow interest laws." *Lusnak*, 883 F.3d at 1191. First, "the purpose of Congress is the ultimate

24    touchstone in every pre-emption case." *Id.* (internal quotations omitted). Thus, "[w]hen Congress has

25    made its intent known through explicit statutory language, the courts' task is an easy one." *Id.*

26

27    ───────────────

    [8] As legislation, section 1043 referred to "…any contract entered into on or before the date of enactment of this Act…" Dodd-Frank § 1043. The date "July 21, 2010" was inserted upon codification. *See* 12 U.S.C. § 5553 notes.

28

1    Second, although the usual presumption against preemption does not apply in banking cases, the

2    absence of the presumption does not "absolve a national bank of the burden of proving its

3    preemption defense." *Id.* "Where, as here, we are confronted with state consumer protection laws, a

4    field traditionally regulated by the states, compelling evidence of an intention to preempt is

5    required." *Id.* (internal quotation marks and citations omitted).

6    **B.    Congress Plainly Intended To End The Old HOLA Field Preemption Regime Upon The Dodd-Frank Effective Date**

7    Flagstar's preemption theory fails because it flouts the plain language and intent of Congress

8    that effective July 21, 2011, "[a]ny determination by a court … regarding the relation of State law to

9    a provision of [HOLA] or any regulation or order prescribed under [HOLA] *shall* be made in

10   accordance with the laws and legal standards applicable to national banks regarding the preemption

11   of State law." 12 U.S.C. § 1465(a) (emphasis added). Under *Lusnak*, that legal standard is (and

12   always was) the conflict preemption standard articulated in *Barnett Bank*.[9] *See Lusnak*, 883 F.3d at

13   1194. The statutory language is unambiguous that this HOLA amendment applies to court

14   determinations going forward from the effective date. *See* 12 U.S.C. § 1465(a); *see In re Pryor*, 479

15   B.R. 694, 700-701 (Bankr. E.D.N.C. 2012).

16   There is no retroactivity issue here. Plaintiffs' claims are based on Flagstar's non-compliance

17   with section 2954.8 occurring since 2014 (four years prior to the filing of the complaint). Under

18   *Landgraf*, a statute is not deemed to operate retroactively "merely because it ...  upsets expectations

19   based in prior law." *Landgraf*, 511 U.S. at 269 (internal citation omitted). "Rather, the court must ask

20   whether the new provision attaches new legal consequences to events completed before its

21   enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process

22   of judgment concerning the nature and extent of the change in the law and the degree of connection

23   between the operation of the new rule and a relevant past event." *Id.*at 269-270. Thus, even if the

24   HOLA amendments represent a change in the law, their application here is not "retroactive" under

25

26

27       [9] *Barnett Bank of Marion Cty.v. Nelson, Fla. Ins. Comm'r, et al.*, 517 U.S. 25 (1996) ("*Barnett Bank*").

28

1   *Landgraf* analysis. It is just a change in the law that Flagstar was obliged to comply with going

2   forward.

3          Moreover, when an amendment clarifies preexisting law, *Landgraf* retroactivity analysis is

4   not needed. *See ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 689 (9th Cir. 2000). Such "clarifying

5   legislation is not subject to any presumption against retroactivity and is applied to all cases pending

6   as of the date of its enactment." *Id.* Where, as here, "Congress has formally declared … a

7   clarification [] in the title of the Act as well as in the Committee Reports," that declaration of intent

8   is entitled to great weight. *See Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265-66 (9th Cir.

9   1997). Indeed, it "has been established law since nearly the beginning of the republic … that

10  congressional legislation that … expresses the intent of an earlier statute must be accorded great

11  weight." *Id.* at 1265. Thus, "[n]ormally, when an amendment is deemed clarifying rather than

12  substantive, it is applied retroactively." *Donaghe*, 50 F.3d at 612.

13  **C.      Flagstar Implicitly Relies On A Dodd-Frank Contract Preservation Provision That
            Plainly Does Not Apply To The Smiths**

14         Although Flagstar declines to say so explicitly, its "non-retroactivity" theory is not about

15  statutory retroactivity at all. Rather, it implicitly relies on the idea that section 5553 of Dodd-Frank

16  affirmatively preserves old regulatory regimes with respect to contracts entered into "on or before

17  July 21, 2010." 12 U.S.C. § 5553. Of course there would be no reason to include such a contract

18  preservation provision if Dodd-Frank was not otherwise intended to take effect on its effective date.

19  *See In re Pryor*, 479 B.R. at 701. Nevertheless, Flagstar seeks to muddy the waters by string-citing

20  authorities that conflate the contract preservation provision with statutory non-retroactivity theory.

21  But if each of these citations is traced back to its purported authority, none of it can actually be read

22  to support the pseudo-non-retroactivity theory that Flagstar is advancing here—a theory which

23  cannot stand in the face of the express language and clear Congressional intent.

24         For example, Flagstar cites *Molosky v. Washington Mutual, Inc.*, 664 F.3d 109 (6th Cir.

25  2011), which cites section 5553 as the authority for its over-broad statement that Dodd–Frank

26  "declares that its contents should not be construed as retroactive." *Id.* at 113 n.1. The lines of

27  authorities tracing back to section 5553 are often convoluted. For example, Flagstar cites *Meyer v.*

28

1    *One West Bank*, 91 F. Supp. 3d 1177, 1181 (C.D. Cal. 2015), which has a statement regarding Dodd-

2    Frank non-retroactivity that cites to *Aldana v. Bank of America*, 2014 WL 6750276, at *5 (C.D. Cal.

3    Nov. 26, 2014), which cites to *Higley v. Flagstar Bank*, 910 F. Supp. 2d 1249, 1256 (D. Or. 2012),

4    which relies on section 5553. *Meyers* also cites *Deschaine v. IndyMac Mortgage Services*, 2014 WL

5    281112, at *8 (E.D. Cal. Jan. 23, 2014), which relies on section 5553. Finally, Flagstar also cites

6    cases that simply never reach the retroactivity issue. *See e.g. Sun v. Wells Fargo Bank, Nat'l Assoc.*,

7    2014 WL 1245299, *2–3 (N.D. Cal. Mar. 25, 2014) (no mention of Dodd-Frank or retroactivity).[10]

8              It is true that some courts have interpreted section 5553 to mean that the Dodd-Frank

9    amendments to HOLA do not apply to mortgages originated before its enactment. *See Copeland–*

10   *Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132, 1137–38 (D. Or. 2011). But these cases typically

11   involve scenarios where a federal thrift was the contractual originator of the mortgage, and it (or a

12   successor entity) is the defendant asserting HOLA preemption. The mortgage at issue in *Copeland-*

13   *Turner,* for example, was originated by World Savings Bank, FSB, which changed its name to

14   Wachovia Mortgage, FSB, and was then acquired by Wells Fargo. *See id.* at 1133, 1143-1144. Thus,

15   Wells Fargo received HOLA preemption as the direct successor of a thrift originator.[11] Here, Flagstar

16   cannot assert such a theory because it is not a party to the Smiths' DoT.

17   **D.     Flagstar's Theory Fails Because Congress Did Not Intend To Preserve HOLA Field
         Preemption Of The Consumer Protection Claims Raised In This Case**

18             An independent ground for denial of preemption is that Congress did not intend to preserve

19   HOLA field preemption over claims of state consumer law violations *occurring* after the Dodd-

20   Frank effective date. *See Quintero v. Wells Fargo Bank*, 2014 WL 202755, at *3 (N.D. Cal. Jan. 17,

21   2014).[12] Congress's intent to end HOLA field preemption as of the Dodd-Frank effective date is

22

23   _____

     [10] In considering Flagstar's string citations, it is worth noting that during this era following the
24   mortgage crisis distressed homeowners bombarded the federal courts with often-dubious foreclosure
     defense litigation that was rarely thoroughly litigated and frequently disposed of in a cursory manner.

25   [11] As Judge Chen recently concluded, however, HOLA preemption does not automatically apply
26   in favor of a national bank that acquires a loan executed a by federal thrift. *See McShannock v. JP
     Morgan Chase Bank N.A.*, 2018 WL 6439128, at *6–8 (N.D. Cal. 2018). The better view, consistent
27   with this Court's decision in *Flagstar I*, applies the regulatory regime that applied at the time to the
     entity that actually undertook the actions from which the claims arise. *See id.*

28   [12] Flagstar itself cites *Quintero*, but in a highly misleading manner, asserting that *Quintero*
     applied HOLA preemption despite the fact that the majority of wrongful conduct occurred after the

clearly demonstrated by both the language Congress chose for the HOLA amendments and its

decision to deem them *clarifications* of existing law. *See* 12 U.S.C. § 1465; *In re Pryor*, 479 B.R. at

701. Section 5553 cannot reasonably be interpreted to reverse this core intent whenever a state

consumer law violation relates in some way to a contract that the federal thrift entered into prior to

Dodd-Frank's enactment. *See Cline v. Bank of Am.*, 823 F. Supp. 2d 387, 396 (S.D. W. Va. 2011)

("section 5553 was intended to preserve existing contracts by national banks, not to effectively

insulate those institutions from generally applicable state consumer protection actions"); *In re Pryor*,

479 B.R. at 701 (same). If Congress intended section 5553 to have such a sweeping countervailing

effect, then Congress would have used requisitely sweeping language to that effect.

Accordingly, even if Flagstar had been a party (or a successor to a party) to the Smiths' DoT

agreement, or entered into some loan servicing agreement prior to Dodd-Frank's enactment date in

2010—it did not—section 5553 would still not apply because such agreements would not involve

contractual rights for section 5553 to preserve against the HOLA amendments. The DoT simply

provides that the lender is not required to pay interest on escrow funds unless "Applicable Law

requires interest to be paid on the Funds." RJN, Ex. B at § 3. Such language would not vest Flagstar

with an ongoing contractual right *not to pay* interest on escrow accounts when applicable law

requires it to do so.

---

Dodd Frank effective date. *See* Flagstar Bank, FSB's Notice of Motion and Motion to Dismiss
Plaintiffs' First Amended Complaint; Memorandum of Points and Authorities (Dkt. No. 26) ("Mtn.")
at 16. But *Quintero* found against preemption, stating:

> The parties do not discuss Dodd-Frank and the impact, if any, it may
> have on the preemption analysis in this case. The Court notes that while
> the majority of the wrongful conduct alleged in the Complaint occurred
> after July 2011—the latest Dodd-Frank took effect—the underlying loan
> at issue is Plaintiff's 2006 refinance. Other courts have looked to the date
> of loan origination in determining whether to apply Dodd-Frank's new
> preemption standard. …The Court, however, questions the utility of
> using the date of loan origination in a case, such as this, where there are
> no loan origination issues and the matter concerns compliance with post-
> Dodd-Frank foreclosure laws... For the purposes of this Order [however]
> …the Court assumes field preemption applies.

*Quinterro*, 2014 WL 202755, at *3.

1

## V.    CONCLUSION

2

For the reasons set forth above, Defendant's Motion to Dismiss should be denied. Should the

3

Court dismiss any claim, Plaintiffs respectfully request leave to amend.

4

5

6

DATED:  December 14, 2018                    Respectfully submitted,

7

**HAGENS BERMAN SOBOL SHAPIRO LLP**

8

By  /s/ Thomas E. Loeser

9

        Thomas E. Loeser (SBN 202724)

10

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292

11

Fax: (206) 623-0594
toml@hbsslaw.com

12

13

Peter B. Fredman (SBN 189097)
**LAW OFFICE OF PETER FREDMAN PC**

14

125 University Ave, Suite 102
Berkeley, CA 94710

15

Tel: (510) 868-2626
Fax: (510) 868-2627

16

peter@peterfredmanlaw.com

17

*Attorney for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on December 14, 2018, which will send notification of such filing to the e-mail addresses registered.

*/s/ Thomas E. Loeser*
Thomas E. Loeser