IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOWELL and GINA SMITH, husband and wife, and WILLIAM KIVETT, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLAGSTAR BANK, FSB, a federal savings bank, and DOES 1–100, inclusive,<br><br>Defendants. | No. C 18-05131 WHA<br><br>**ORDER CONVERTING MOTION TO DISMISS INTO MOTION FOR SUMMARY JUDGMENT AND ALLOWING IMMEDIATE DISCOVERY** |

**INTRODUCTION**

In this putative class action for breach of contract and violation of Section 17200 of the California Business & Professions Code, defendant moves to dismiss the complaint. For the following reasons, this order converts the motion to dismiss into a motion for summary judgment and allows immediate discovery.

**STATEMENT**

When plaintiffs Lowell and Gina Smith first brought this putative class action in April 2018, it was dismissed without prejudice for their failure to comply with the notice-and-cure provision in the deed of trust (Case No. 18-02350, Dkt. No. 38). Having since provided defendant Flagstar Bank written notice and opportunity to cure, the Smiths are now back and again allege breach of contract and violation of Section 17200 of the California Business &

Professions Code. William Kivett, a resident of Ventura County, California, has now also joined as plaintiff.

The facts pertaining to the Smiths remain unchanged. In October 2004, the Smiths obtained a mortgage loan to finance their purchase of real property located in California from an unrelated third party. To provide security for the loan, plaintiffs executed a deed of trust on a standard Fannie Mae/Freddie Mac form. The deed of trust called for the establishment of an escrow impound account and required that interest be paid on funds in the escrow account if doing so was required by applicable law. The Smiths allege that prior to 2012, Flagstar took over the servicing of the Smiths' mortgage account and remained the loan servicer until August 2015. The Smiths also allege that Flagstar, while servicing the Smiths' mortgage, maintained an escrow account pursuant to the deed of trust and held the Smiths' money in that escrow account. During the period that Flagstar serviced the Smiths' mortgage and held their money in escrow, no interest accrued on the funds despite a California statute requiring interest on such accounts (First Amd. Compl. ¶¶ 12–13, 16–18).

As to plaintiff Kivett, he obtained a mortgage loan from Flagstar in September 2012 and executed a deed of trust on a standard Federal Housing Administration California form. Plaintiff Kivett alleges that Flagstar serviced his loan from its inception in 2012 until he refinanced in April 2015, and that Flagstar held his money in an escrow account during that time without paying interest as required by California law. In September 2018, Plaintiff Kivett gave written notice and demand for cure, which Flagstar denied, citing "a preemption [they] are currently exercising" (First Amd. Compl. ¶¶ 19–20, 23–25).

Plaintiffs, as a putative class, allege breach of contract and violation of Section 17200 of the California Business & Professions Code. Under Section 17200, plaintiffs allege unlawful business practices based on violation of California Civil Code § 2954.8(a) and unfair business practices for undertaking substantially harmful conduct that lacked any legitimate utility. All claims arise out of Flagstar's failure to pay interest on escrow accounts when Flagstar serviced plaintiffs' respective loans under deeds of trust between 2011 and 2015. Jurisdiction stems from the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as the proposed Class

exceeds one hundred members, the amount in controversy exceeds $5,000,000, and minimal diversity exists between plaintiffs, who are all residents of California, and defendant Flagstar, a citizen of Michigan.

Flagstar initially moved to dismiss the complaint in its entirety for all plaintiffs on the grounds that plaintiffs' claims were wholly preempted by the Home Owners' Loan Act (HOLA), 12 U.S.C. §§ 1461–68. Subsequent briefing, however, has narrowed the scope of claims as plaintiffs' counsel has abandoned plaintiff Kivett's breach of contract claim, conceding that plaintiff Kivett's "deed of trust does not support a breach of contract claim." In addition, Flagstar has clarified in the reply brief that it is no longer seeking dismissal of the Section 17200 claims for plaintiff Kivett at this stage (Opp. 1; Reply Br. 2).

**ANALYSIS**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, district courts may not consider materials outside the pleadings when assessing the sufficiency of a complaint under FRCP 12(b)(6). *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001). FRCP 12(d), however, provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." All parties must then be given a "reasonable opportunity to present all the material that is pertinent to the motion," including the opportunity to take reasonable discovery to meet the issues raised by the extraneous material.

Extraneous material, however, is allowed on a Rule 12 motion in two instances: judicial notice under Federal Rules of Evidence 201 and the incorporation-by-reference doctrine. *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 998 (9th Cir. 2018). Both of these procedures allow district courts to consider materials outside a complaint, but their use must be "consistent with the prohibition against resolving factual disputes at the pleading stage." *Id.* at 1003.

3

**1. JUDICIAL NOTICE AND INCORPORATION-BY-REFERENCE.**

A court may judicially notice a fact that is "*not subject to reasonable dispute*" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Federal Rules of Evidence 201(b) (emphasis added). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja,* 899 F.3d at 999.

Incorporation-by-reference, in contrast, is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. The doctrine prevents plaintiffs from cherry-picking portions of documents that support their claims, while omitting portions of the same documents that weaken their claims. *Ibid*. A defendant may seek to incorporate a document by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim," but the "mere mention of the existence of a document is insufficient to incorporate the contents of a document by reference." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, Flagstar wants five exhibits to be judicially noticed (Exhibits A–E). Exhibits A–C are documents relating to the Smiths, while Exhibits D–E are documents relating to plaintiff Kivett (RJN at 2). Flagstar, however, seems to conflate judicial notice and incorporation-by-reference, requesting "judicial notice of Exhibit A through Exhibit E as Plaintiffs allege their contents within the [first amended complaint]" (RJN at 3–4).

Incorporation-by-reference would be inappropriate in this instance. A mere mention of the existence of the document is insufficient for incorporation by reference. Yet, the documents in Exhibits A–E are each mentioned only once in the complaint and not discussed in any detail (RJN at 3–4; First Amd. Compl. ¶¶ 12–13, 16–17, 19–20). These single references fall far short of required standard: extensively referring to the document or the document forming the basis of the plaintiff's claim. *See Ritchie*, 342 F.3d at 908.

Judicial notice is more appropriate. Neither party challenges the authenticity of these documents and there are certainly facts contained in the documents that are not subject to reasonable dispute. For example, the contractual terms, the clearly indicated parties, and the

4

relevant dates in the documents are not subject to reasonable dispute and are appropriate for judicial notice.

Certain facts contained in the documents, however, are "subject to reasonable dispute" within the meaning of Federal Rules of Evidence 201(b). The Smiths and Flagstar disagree over whether Exhibit A, the Smiths' promissory note, establishes that Flagstar "participated in the origination of the Smiths' loan and became its original servicer immediately after origination" (Reply. Br. 6). Flagstar is correct that the promissory note is self-described as a "Flagstar modified version of Fannie Mae Uniform Instrument Form 3520" and that it does state, "PAY TO THE ORDER OF: FLAGSTAR BANK, FSB WITHOUT RECOURSE," on the signature page. Yet, that does not resolve, beyond reasonable dispute, who was involved in the Smiths' original mortgage contract. The Smiths counter that the promissory note shows that the "Lender" listed is Wholesale American Mortgage and that Flagstar does not appear as a party in the promissory note, or at all except for the mentioned reference on the signature page (RJN, Exh. A at 11; Opp. 3–4).

Therefore, Flagstar's request for judicial notice as to the dates, basic terms, and clearly indicated parties for Exhibits A–E is **GRANTED.** However, Flagstar's request for judicial notice for the proposition that Flagstar was involved in the origination of the Smiths' mortgage and became its original servicer is reasonably disputed and is an inappropriate subject for judicial notice.

### 2. HOLA PREEMPTION.

HOLA preemption is again at issue. The primary question is whether HOLA preempts California Civil Code § 2954.8(a), which requires the following:

> Every financial institution that makes loans upon the security of real property containing only a one- to four-family residence and located in this state or purchases obligations secured by such property and that receives money in advance for payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, shall pay interest on the amount so held to the borrower. The interest on such amounts shall be at the rate of at least 2 percent simple interest per annum. Such interest shall be credited to the borrower's account annually or upon termination of such account, whichever is earlier.

It is undisputed that before the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), HOLA and 12 C.F.R. § 560.2 preempted Section 2954.8(a) of the California Civil Code. Before the enactment of Dodd-Frank, Section 560.2(a) provided the Office of Thrift Supervision (which Dodd-Frank merged into the Office of the Comptroller of the Currency) with field preemption for regulations affecting federal savings associations like Flagstar (Opp. 2; Reply Br. 3).

The dispute here is whether HOLA field preemption continued after the enactment of Dodd-Frank. The previous order dismissing the case relied on a recent decision of our appeals court, *Lusnak v. Bank of Am., N.A.*, 882 F.3d 1185 (9th Cir. 2018). *Lusnak* held that the National Bank Act, which governed national banks via the Office of the Comptroller of the Currency, did *not* preempt Section 2954.8(a) of the California Civil Code. Dodd Frank plainly stated in a section titled, "State law preemption standards for Federal savings associations clarified" that "any regulation or order prescribed under this chapter shall be made in accordance with the laws and legal standards applicable to national banks regarding the preemption of state law." 12 U.S.C. § 1465. The previous order, therefore, concluded that the standard that applied to the national banks in *Lusnak* also applied to the instant case for federal thrifts. The order further stated: "even if missed interest accruals before the effective date enjoyed the same field preemption standard during the old regime, all payments due after the effective date should have been paid" (Case No. 18-02350 WHA, Dkt. No. 38 at 4).

That conclusion still holds valid for any contracts that were executed after July 21, 2010, like plaintiff Kivett, who executed his deed of trust on September 19, 2012. However, with the benefit of better briefing, the Court qualifies its previous conclusion for contracts that were entered into on or before July 21, 2010, one year *before* the enactment date of Dodd-Frank. The Dodd-Frank Act contained a provision for preserving contracts, which stated:

> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to any contract entered into on or before July 21, 2010, by national banks, Federal savings

6

> associations, or subsidiaries thereof that are regulated and
> supervised by the Comptroller of the Currency or the Director of
> the Office of Thrift Supervision, respectively.

12 U.S.C. § 5553. This section preserved the original HOLA field preemption scheme that existed prior to the enactment of Dodd-Frank for "any contract entered into on or before July 21, 2010." The question then is whether the Smiths' deed of trust falls under the purview of Section 5553.

Here, the Smiths' deed of trust originated in October 2004, which puts it temporally within the realm of Section 5553. The next issue is whether the Smiths entered into a contract with a "national bank, Federal savings associations, or subsidiaries thereof." 12 U.S.C. § 5553. The four corners of the operative complaint do not speak to the issue, yet Flagstar, as discussed above, attempts to resolve the factual dispute at the pleading stage by requesting judicial notice of the proposition that Flagstar was involved in the origination of the Smiths' mortgage and became its original servicer (RJN, Exh. A; Reply Br. 6).

This factual dispute is important here. If the Smiths are under the purview of Section 5553, it is likely that the Smiths' claims will be preempted by HOLA. Flagstar has failed to muster any new arguments that counter the reasoning in the previous order regarding *Lusnak*. The decisions of the undersigned judge that Flagstar referenced in oral argument, *Sun v. Wells Fargo Bank, NA*, 2014 WL 1245299 (N.D. Cal. 2014), and *Meyers v. Wells Fargo*, 2013 WL 6407516 (N.D. Cal. 2013), are inapposite as they discussed HOLA preemption without mention of Dodd-Frank. Furthermore, Flagstar's arguments that Dodd-Frank was not retroactive are unavailing and countered by Section 5553 itself, which only preserved contracts entered into at least one year before Dodd-Frank's enactment date.

Given the importance of this factual dispute and because "matters outside the pleading are presented to and not excluded by the court," the motion to dismiss must be treated as one for summary judgment under Rule 12(d). In turn, under Rule 56(d), which authorizes a court to allow time for discovery during a motion for summary judgment when facts are unavailable to the nonmovant, parties must be given reasonable opportunity to present all material pertinent to the motion, specifically as to (1) what extent Flagstar was involved in the origination of the

7

Smiths' mortgage and (2) whether a contract existed between the Smiths and Flagstar that would have preserved HOLA preemption pursuant to Section 5553. Immediate discovery into these issues is now allowed and supplements on this motion will be filed by **NOON ON APRIL 18, 2019**.

## CONCLUSION

There having been no motion as to plaintiff Kivett, discovery may proceed as to him. As to the Smiths, discovery shall proceed as described above and this Rule 12 motion to dismiss will be treated as a Rule 56 motion for summary judgment.

**IT IS SO ORDERED.**

Dated: February 14, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE