1  **MCGUIREWOODS LLP**
   David C. Powell (SBN 129781)
2  dpowell@mcguirewoods.com
   Carolee A. Hoover (SBN 282018)
3  choover@mcguirewoods.com
   Aaron R. Marienthal (SBN 273154)
4  amarienthal@mcguirewoods.com
   Alexander J. Gershen (SBN 291929)
5  agershen@mcguirewoods.com
   Two Embarcadero Center, Suite 1300
6  San Francisco, CA  94111-3821
   Telephone:  415.844.9944
7  Facsimile:  415.844.9922

8  Attorneys for Defendant
   Flagstar Bank, FSB

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12  LOWELL and GINA SMITH, individually, and          Case No. 3:18-cv-05131-WHA
13  on behalf of others similarly situated,
                                                      **DEFENDANT FLAGSTAR BANK, FSB'S**
14              Plaintiffs,                            **SUPPLEMENTAL BRIEFING IN**
                                                      **SUPPORT OF MOTION FOR SUMMARY**
15       vs.                                          **JUDGMENT (CONVERTED FROM**
                                                      **MOTION TO DISMISS)**
16  FLAGSTAR BANK, FSB, a federal savings
    bank, and DOES 1-100, inclusive,
17                                                     Complaint Filed: August 22, 2018
                Defendant.                             FAC Filed: October 19, 2018
18
19                                                     Honorable Judge William H. Alsup

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.      INTRODUCTION ....................................................................................................... 1

II.     UNDISPUTED FACTS ............................................................................................. 2

    A.      Flagstar and WAM Enter Into Correspondent Lending Arrangement......................... 2

    B.      Origination of Smiths' Loan ......................................................................................... 2

    C.      Servicing of Smiths' Loan ............................................................................................ 4

III.    LEGAL STANDARD ................................................................................................ 5

IV.     THE UNDISPUTED FACTS SHOW THE SMITHS' CLAIMS ARE PREEMPTED ......... 6

    A.      There Is No Dispute That HOLA and Section 560.2 Preempts Civil Code
    Section 2954.8 ............................................................................................................... 6

    B.      Flagstar Was Intimately Involved In Originating the Smiths' Loan, Which
    Gives Rise to HOLA Preemption Rights ...................................................................... 7

        1.      Flagstar Underwrote, Funded, Approved, Closed, and Acquired the
        Loan Through a Correspondent Lending Agreement with Wholesale
        America Mortgage ............................................................................................. 7

        2.      The OTS, OCC, and HUD Each Consider Correspondent Lending,
        Warehousing, and Table-Funding as Synonymous with Origination ............. 9

        3.      Courts Also Consider Correspondent Lending, Warehousing, and
        Table-Funding as Functionally Equivalent to Originating ........................... 10

            a.      In Re Thomas I................................................................................. 10

            b.      In Re Thomas II ............................................................................... 11

            c.      In Re Thomas III .............................................................................. 12

            d.      Stolz v. OneWest Bank .................................................................... 13

    C.      There Can Be No Dispute That Flagstar "Entered Into" a Contract with the
    Smiths at the Time of Origination .............................................................................. 15

    D.      CONCLUSION............................................................................................................ 17

CERTIFICATE OF SERVICE ................................................................................................... 1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguayo v. U.S. Bank*, 658 F.Supp.2d 1226 (S.D. Cal. 2009) ............................................................11

*Akopyan v. Wells Fargo Home Mortg., Inc*., 215 Cal.App.4th 120 (2013) ........................................13

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) ......................................................................5

*Bank of Am., N.A. v. Mitchell*, 204 Cal.App.4th 1199 (2012) ............................................................16

*Celotex Corp.v. Cattrett*, 477 U.S. 317 (1986) ..................................................................................5

*Copeland-Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132 (D. Or. 2011) ...................................15

*Culpepper v. Inland Mortg. Corp*., 132 F.3d 692 (11th Cir. 1998) .....................................................13

*Deschaine v. IndyMac Mortg. Servs*., 2014 WL 281112 (E.D. Cal. Jan. 23, 2014),
    *aff'd*, 617 F. App'x 690 (9th Cir. 2015) ......................................................................................15

*Debrunner v. Deutsche Bank Nat'l Trust Co*., 204 Cal.App.4th 433 (2012) .......................................8

*Domarad v. Fisher & Burke, Inc*., 270 Cal.App.2d 543 (1969) ..........................................................8

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) ........................................................................13

*Fidelity Federal Sav. and Loan Assn. v. de la Cuesta*, 458 U.S. 141 ..................................................13

*Gorton v. Wells Fargo Bank NA*, 2013 WL 12128775 (C.D. Cal. June 3, 2013) .............................15

*Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249 (D. Or. 2012) ................................................17

*In re Thomas,* 447 B.R. 402 (Bankr. D. Mass. 2011) ...................................................................11, 17

*In re Thomas*, 476 B.R. 691 (Bankr. D. Mass. 2012), *aff'd sub nom. Thomas v.
    CitiMortgage, Inc.*, 2013 WL 4786060 (D. Mass. Sept. 5, 2013) ..........................................11, 17

*Marrero v. Patterson*, 2018 WL 4207261 (N.D. Cal. Sept. 4, 2018) ..................................................5

*McCauleyHome Loan Inv. Bank, F.S.B*., 710 F.3d 551 (4th Cir. 2013) ...........................................15

*Metzger v. Wells Fargo Bank*, 2014 WL 1689278 (C.D. Cal. Apr. 28, 2014) ....................................7

*Meyer v. One W. Bank, F.S.B*., 91 F.Supp.3d 1177 (C.D. Cal. 2015) ...............................................15

*Reagan v. Racal Mortgage, Inc*., 135 F.3d 37 (1st Cir. 1998) ...........................................................13

*Radobenko v. Automated Equip. Corp*., 520 F.2d 540 (9th Cir. 1975) ..............................................16

i

*Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103 (C.D. Cal. Jan. 11, 2012),
    *vacated,*  2012 WL 13014626 (C.D. Cal. Apr. 18, 2012) ...........................................15

*Storch v. McCain*, 85 Cal.304 (1890) ...................................................................................8

*Stolz v. OneWest Bank, FSB*, 2012 WL 135424 (D. Or. Jan. 13, 2012), *report and recommendation
    adopted sub nom. Stolz v. OneWest Bank, FSB*, 2012 WL 1093712 (D. Or. Mar. 30,
    2012)…………………………………………………………………………… 13, 14

*Thomas v. CitiMortgage, Inc.*, 2013 WL 4786060 (D. Mass. Sept. 5, 2013) ...............................12, 17

*Wagner v. Benson*, 101 Cal.App.3d 27, 33 (1980) ...........................................................16

**Statutes**

12 U.S.C. § 5553 ..........................................................................................................*passim*

12 U.S.C. § 1461-68 ..................................................................................................1, 6, 9

Cal. Civ. Code § 1084 .....................................................................................................8

Cal. Civ. Code § 2936.......................................................................................................8

Cal. Civ. Code § 2954.8 ...............................................................................................*passim*

**Other Authorities**

12 C.F.R.
    § 541.11........................................................................................................................6

12 C.F.R. § 560.2 .............................................................................................................6

12 C.F.R. § 560.30…………………………………………………………………………… 9

48 Fed. Reg. 23040, 1983 WL 131461 (May 23, 1983) ...............................................13

Law of Fraudulent Transactions, Alces, § 8:22 (2019) ....................................................6

OCC, Interpretive Letter # 1002 (May 13, 2004) ................................................10, 11, 15

OCC, Interpretive Letter # 1016 (Feb. 2005) ...............................................................10, 11

OTS Examiner Handbook: MORTGAGE BANKING, 2008 WL 7675049………………………   10

OTS Opinion Letter, P–2003–5 (July 23, 2003) ...............................................................6

*Williston on Contracts* § 74.10 (4th ed.) ...........................................................................8

*Witkin*, Summary 11th Contracts § 758 (2018) ...............................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On November 30, 2018, Flagstar Bank, FSB ("Flagstar") moved to dismiss the claims of Plaintiffs Lowell and Gina Smith (the "Smiths") on the grounds they were preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461-68 and the implementing regulation, 12 C.F.R. § 560.2 ("Section 560.2").  On February 14, 2019, the Court converted Flagstar's motion to dismiss into a motion for summary judgment (Dkt. No. 37), and noted that 12 U.S.C. § 5553 of the Dodd-Frank Act "preserved the original HOLA field preemption scheme that existed prior to the enactment of Dodd-Frank" for "any contract entered into on or before July 21, 2010…by Federal savings associations."  "The question then is whether the Smiths' deed of trust falls under the purview of [12 U.S.C.] Section 5553."

To help determine the answer to that question, the Court ordered immediate discovery and supplemental briefing on two distinct, but related issues: "to (1) what extent Flagstar was involved in the origination of the Smiths' mortgage and (2) whether a contract existed between the Smiths and Flagstar that would have preserved HOLA preemption pursuant to Section 5553."

The facts, which cannot be genuinely disputed, demonstrate that Flagstar was intimately involved originating the Smiths' mortgage: Flagstar underwrote, funded, approved, closed, and acquired the Loan through a correspondent lending agreement with Wholesale America Mortgage ("WAM").  The Office of Thrift Supervision ("OTS"), Office of Comptroller of the Currency ("OCC"), and Department of Housing and Urban Development ("HUD") all agree that where, as here, a loan is closed in a broker or correspondent lender's name, like WAM, and immediately transferred to a funding lender, like Flagstar, the funding lender is considered the "original lender" for federal preemption purposes.  The few courts that have analyzed this scenario also agree.

In addition, the facts unequivocally demonstrate that a contract—*i.e.,* the Note and Deed of Trust—existed between the Smiths and Flagstar, preserving HOLA preemption pursuant to 12 U.S.C. § 5553 ("Section 5553").  Flagstar immediately became the Smiths' contractual lender and loan servicer, and owned the Loan from inception until the ownership interest was transferred to CitiBank,

N.A. in June of 2015.  Indeed, Plaintiffs allege the Smiths had a contract with Flagstar in their First Amended Complaint.

Accordingly, Section 560.2 preempts the Smiths' claims against Flagstar—both before and after Dodd-Frank.  As a result, they fail as a matter of law and must be dismissed.

## II.    UNDISPUTED FACTS

### A.    Flagstar and WAM Enter Into Correspondent Lending Arrangement

On August 17, 2001, Flagstar entered into a Correspondent Lending Agreement with RDP Capital, Inc. dba California Financial Group, ("RDP") located at 2410 San Ramon Valley Blvd., Suite 115, San Ramon, California 94583 (the "Correspondent Lending Agreement").  *See* Declaration of Paul Poles in support of Supplemental Motion for Summary Judgment Briefing (Converted from Motion to Dismiss) ("Flagstar Decl."), ¶ 5, Ex. A (Correspondent Lending Agreement).  Flagstar assigned RDP a Correspondent Number 68681.  *Id*. at ¶ 6.

In accordance with the Correspondent Lending Agreement, Flagstar agreed to purchase certain residential mortgage loans originated by RDP, "in Flagstar's sole discretion," so long as the loans were, among other things, "underwritten pursuant to Flagstar's underwriting guidelines," subject to a purchase commitment letter issued by Flagstar to RDP, and the servicing rights for the loans were also sold to Flagstar.  *Id*. at ¶ 7, Ex. A, p. 7 (Recitals), §§ 2.1 (Eligible Loans), 2.2 (Submissions and Approval), 2.4(f) (Closing and Delivery).

In or about March 2004, RDP advised Flagstar that it had changed its name to WAM and provided a copy of the Certificate of Amendment of Articles of Incorporation filed with the California Secretary of State's Office on or about March 16, 2004.  *Id*. at ¶ 8, Ex. B (Certificate of Amendment of Articles of Incorporation).

### B.    Origination of Smiths' Loan

On October 27, 2004, Plaintiff Lowell W. Smith executed an Adjustable Rate Note with Interest-Only Period (the "Note") reflecting a $401,250.00 mortgage loan (the "Loan") secured by a deed of trust on property located at 4291 Wilson Lane, Concord, California 94521 and recorded in the Contra Costa County Recorder Office on November 4, 2004 (the "Deed of Trust").  *Id*. at ¶ 9, Exs. C (Note), D (Deed of Trust).  The Note identifies WAM, CRMLA # 4150037, a California corporation,

2

as the Lender and further advises that the "Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  *Id*. at ¶ 10, Ex. C (Note), p. 1.  Per the footer on each page of the Note, the Note was prepared on a "Flagstar modified version of Fannie Mae Uniform Instrument Form 3520" and is known as "Flagstar Form #3811 5/02".  *Id*. at ¶ 11.

On or about November 3, 2004, Flagstar issued a Purchase Commitment Letter to WAM stating that Flagstar agreed to purchase the Loan subject to certain conditions.  *Id*. at ¶ 12, Ex. E (Purchase Commitment Letter).  Indicating Flagstar's purchase of the Loan, the Note contains an endorsement to "Flagstar Bank, FSB without recourse" executed by Ronald Perkins, President of WAM, CRMLA # 4150037, a California corporation.  *Id*. at ¶ 13, Ex. C (Note), p. 5.

The Note further required the Smiths' monthly payments to be sent to Flagstar.  *Id*. at ¶ 14. That the Smiths were to make payments directly to Flagstar since the inception of the Loan is further evidenced by a notice from WAM to Mr. Smith stating that "[y]ou are to make your payments to Flagstar Bank, 5151 Troy Drive, Troy, Michigan 48098."  *Id*. at ¶ 15, Ex. F (Payment Notice 1).  Mr. Smith was further advised that his loan has been sold, "along with its servicing" and that all payments should be made to "Flagstar Bank FSB, ATTN: Payment Processing, Mail Stop S-125-1, 5151 Corporate Drive, Troy, Michigan 48098."  *Id*. at ¶ 16, Ex. G (Payment Notice 2).  The address listed was intended to be the same address as 5151 Corporate Drive, Troy Michigan 48098, Flagstar's corporate address.  *Id*. at ¶ 17.

Like the Note, the Deed of Trust identifies the Lender as WAM, CRMLA # 4150037, MERS as the "nominee for the Lender and Lender's successors and assigns", as well as the "beneficiary of this Security Instrument…(solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS".  *Id*. at ¶ 18, Ex. D (Deed of Trust), pp. 1-2.  The Deed of Trust further defines a Loan Servicer as "the entity…that collects Periodic Payments due under the Note and this Security Instrument and performs other loan servicing obligations under the Note, this Security Instrument, and Applicable Law."  *Id*. at ¶ 19, Ex. D, pp. 10-11, ¶ 20.  Finally, per the footer on each page, the Deed of Trust was prepared on a "Flagstar modified version of Fannie Mae Uniform Instrument Form 3138" and is known as "Flagstar Form #3812 5/02".  *Id*. at ¶ 20, Ex. D.

FLAGSTAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS (CONVERTED TO MOTION FOR SUMMARY JUDGMENT)

1    The Loan closed on November 3, 2004 and all of the final documents related to the closing of

2  the Loan were to be sent to Flagstar, per the instructions to WAM, a "Correspondent (warehouse

3  line)." *Id*. at ¶ 21, Ex. H (Closing Instructions).  The Loan was funded with a warehouse line of credit

4  provided by Flagstar to WAM as evidenced by Flagstar's Warehouse Line of Credit (WARLOC)

5  application screen, showing a wire transfer of funds from WAM's line of credit account with Flagstar

6  to the settlement agent for the Smiths', Chicago Title Company, at its account with Comerica Bank.

7  *Id*. at ¶ 22, Ex. I (WARLOC application screen).

8    Flagstar, in exchange for purchasing the Note, replenished WAM's line of credit with Flagstar

9  with a wire transfer of $407,799.89 on November 3, 2004, which included the mortgage amount, less

10  other fees and discounts.  *Id*. at ¶ 23, Ex. J (Funding Breakdown).  According to Flagstar's Funding

11  Breakdown, WAM's line of credit with Flagstar was replenished on the basis of "Funding for [Smith,

12  Lowell] Loan".  *Id*.  Pursuant to Pursuant to the Final Settlement Statement for the Loan, WAM

13  received a $590 "Lender Fee" for its role originating the Loan.  *Id*. at ¶ 24, Ex. K (Final Settlement

14  Statement).

15    Flagstar performed the underwriting for the Loan, approved the Loan to close (after all

16  conditions cleared), and was involved in all aspects of originating the Loan, including final closing

17  and post-closing.  *Id*. at ¶ 25.  As evidenced by the endorsement to Flagstar on the Note, Flagstar

18  immediately became the holder of the Note and owner of the Loan until the ownership interest in the

19  Loan was transferred to CitiBank, N.A. in or about June 2015, as evidenced by an Assignment of

20  Deed of Trust dated August 3, 2016 and recorded in the Contra Costa County Recorder Office on

21  August 11, 2016.  *Id*. at ¶ 26, Exs. L (MERS Milestones), M (August 11, 2016 Assignment of Deed

22  of Trust).

23    **C.    Servicing of Smiths' Loan**

24    In connection with the Loan, WAM "or their assignee" agreed to "waive their normal

25  requirement providing for escrow of taxes and insurance" upon Mr. Smith's agreement to "pay said

26  property taxes and insurance premiums promptly when due[.]" *Id*. at ¶ 27, Ex. N (Waiver).  Mr. Smith

27  executed the waiver. *Id*.

28    However, on or around July 2005, Flagstar received notice that the Smiths were delinquent on

4

1  state of local taxes and assessments, and pursuant to the terms of the Loan, Flagstar opened an escrow

2  account in the Smiths' name.  *Id*. at ¶ 28.  Around this time, Flagstar provided the Smiths with notice

3  that the escrow account had been created, pursuant to the terms of the Loan, and that Flagstar would

4  hold funds in escrow for the payment of taxes, assessments, and insurance on behalf of the Smiths.

5  *Id*. at ¶ 29.

6          Flagstar serviced the Loan from origination to July 11, 2009, when the servicing was

7  transferred to Carrington Mortgage Services, LLC, as evidenced by a notice from Flagstar to Mr.

8  Smith dated June 25, 2009.  *Id*. at ¶ 30, Ex. O (Notice of Servicing Transfer to Carrington).  Flagstar

9  resumed servicing the Loan on or about April 19, 2011, as evidenced by a notice from Carrington

10  Mortgage Services, LLC to Mr. Smith dated April 1, 2011.  *Id*. at ¶ 31, Ex. P (Notice of Servicing

11  Transfer to Flagstar).  The servicing rights were transferred from Flagstar to Fay Servicing, LLC

12  effective August 4, 2015, as evidenced by a notice from Flagstar to Mr. Smith dated July 17, 2015.

13  *Id*. at ¶ 32, Ex. Q (Notice of Servicing Transfer to Fay).

14                          **III.   LEGAL STANDARD**

15          Summary judgment is proper where the pleadings, discovery and affidavits show that there is

16  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

17  of law."  Fed. R. Civ. P. 56.  "Material facts are those which may affect the outcome of the case. A

18  dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

19  verdict for the nonmoving party."  *Marrero v. Patterson*, 2018 WL 4207261, at *1–2 (N.D. Cal. Sept.

20  4, 2018) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party for

21  summary judgment bears the initial burden of identifying those portions of the pleadings, discovery

22  and affidavits which demonstrate the absence of a genuine issue of material fact.  When the moving

23  party has met this burden of production, the nonmoving party must go beyond the pleadings and, by

24  its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.

25  If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the

26  moving party wins."  *Id.*  (*citing Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986)).

27  ///

28  ///

5

## IV.   THE UNDISPUTED FACTS SHOW THE SMITHS' CLAIMS ARE PREEMPTED

### A.   There Is No Dispute That HOLA and Section 560.2 Preempts Civil Code Section 2954.8

The Smiths' claims are based entirely on their contention that Flagstar, a federal thrift,[1] violated California Civil Code Section 2954.8 ("Section 2954.8") by failing to pay interest on their escrow account.  However, as the Court held in its order on Flagstar's motion to dismiss, "[i]t is undisputed that before the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank), HOLA and 12 C.F.R. § 560.2 preempted Section 2954.8(a) of the California Civil Code."  February 14, 2019 Order on Flagstar's Motion to Dismiss ("Order"), ECF Document # 37, at 6:1-6; *see also* 12 C.F.R. § 560.2(b)(6) (expressly preempting all "state laws purporting to impose requirements regarding…[e]scrow accounts…."), (10) (expressly preempting "state laws purporting to impose requirements regarding…'Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.'"); Plaintiffs' Opposition to Flagstar's Motion to Dismiss ("Opp."), ECF Document #29, 3:16-17 ("[t]he HOLA field preemption that Flagstar enjoyed until July 21, 2011 preempted the state law.").

Accordingly, "[t]he question then is whether the Smiths' deed of trust falls under the purview of Section 5553 of the Dodd-Frank Act."  Order, at 7:5-6.  As the Court noted, Section 5553 "preserved the original HOLA field preemption scheme that existed prior to the enactment of Dodd-Frank for 'any contract entered into on or before July 21, 2010.'"  *Id.*, at 7:2-6.  Specifically, Section 5553 states:

> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law to ***any contract entered into on or before July 21, 2010, by national banks, Federal savings associations,*** or subsidiaries thereof that are regulated and supervised by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, respectively.

---

[1] "Federal savings associations," as the term is used in preemption regulations, refers to both federal savings associations as well as "federal savings bank[s]," like Flagstar.  12 C.F.R. § 541.11; *see* 12 U.S.C. § 1462(3); First Amended Complaint ("FAC") ¶ 5 (acknowledging that Flagstar is a "federal savings bank").  For simplicity, both federal savings associations and federal savings banks are referred to as "federal thrifts" herein.

12 U.S.C. § 5553.[2]   Here, the Smiths' Loan was originated in October 2004, "which puts it temporally within the realm of Section 5553.  The next issue is whether the Smiths entered into a contract with a 'national bank, Federal savings associations, or subsidiaries thereof.'"  Order, at 7:7-9.  To help make this determination, the Court asked the parties to address two questions in supplemental briefing: "to (1) what extent Flagstar was involved in the origination of the Smiths' mortgage and (2) whether a contract existed between the Smiths and Flagstar that would have preserved HOLA preemption pursuant to Section 5553."  *Id.*, at 7:22-8:3.

**B.     Flagstar Was Intimately Involved In Originating the Smiths' Loan, Which Gives Rise to HOLA Preemption Rights**

In answering the Court's first question, the undisputed facts demonstrate that Flagstar was intimately involved in the origination of the Smiths' Loan as the lender in a correspondent lender relationship with WAM.  As set forth below, regulations promulgated by OTS and OCC, numerous interpretive opinions and regulatory guidance, and courts around the country all interpret this type of correspondent warehouse lending as synonymous with "originating," and treat the funding entity (in this case, Flagstar) as the original lender and creditor for purposes of HOLA preemption.

**1.     Flagstar Underwrote, Funded, Approved, Closed, and Acquired the Loan Through a Correspondent Lending Agreement with Wholesale America Mortgage**

Lowell Smith executed the Note (in his name alone) and Deed of Trust (with his wife Gina Smith) on October 27, 2004.  FAC ¶ 12; Flagstar Decl. ¶ 9, Ex. C.  The Note identifies WAM as the "Lender" and states "Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  Flagstar Decl. ¶ 9-10, Ex. C (Note), p. 1.  The Note was prepared on a "Flagstar modified version of Fannie Mae Uniform Instrument Form 3520" as evidenced by the notations in the footer of each page of the Note.  *Id.* at ¶ 11.  Moreover, the Note was endorsed immediately to "Flagstar Bank, FSB without recourse"

---

[2]According to the Senate Committee Report on Dodd-Frank, a report which Plaintiffs also cite in their opposition to Flagstar's motion to dismiss, Section 5553 was "intended to provide stability to existing contracts." S. REP. 111-176, 175.  Indeed, an incongruent application of preemption standards for loans created before the Dodd-Frank Act would undoubtedly "interfere with the ability of federal savings associations to sell mortgages that they originate under a uniform federal system," and could negatively impact the marketability of loans.  *See, e.g., Metzger v. Wells Fargo Bank*, 2014 WL 1689278, at *3–4 (citing OTS Opinion Letter, P–2003–5 (July 23, 2003)).

1   as evidenced by the endorsement executed by Ronald Perkins, President of WAM.  *Id.* at ¶ 13, Ex. C,

2   p. 5.[3]  The Note required that monthly payments are to be sent to Flagstar.[4]  *Id.* at ¶ 14, Ex. C.

3   In addition to the express language in the Note, the Smiths were immediately advised that all

4   payments were to be made to Flagstar.   WAM subsequently sent Mr. Smith a notice informing him

5   to "make your payments to Flagstar Bank, 5151 Troy Drive, Troy, Michigan 48098."  Flagstar Decl.

6   ¶ 15, Ex. F (Payment Notice 1).  Mr. Smith was further advised that his Loan has been sold, "along

7   with its servicing" and that all payments should be made to Flagstar.  *Id.* at ¶ 16, Ex. G (Payment

8   Notice 2).

9   The Deed of Trust identifies the Lender as WAM, and MERS as the "nominee for the Lender

10  and Lender's successors and assigns", as well as the "beneficiary of this Security Instrument…solely

11  as nominee for Lender and Lender's successors and assigns." *Id.* at ¶ 18, Ex. D, pp. 1-2.  Like the

12  Note, the Deed of Trust was prepared on a "Flagstar modified version of Fannie Mae Uniform

13  Instrument Form 3138".  *Id.* at. ¶ 20, Ex. D.

14  The Loan was funded through a warehouse line of credit provided by Flagstar to WAM.  *Id.* at

15  ¶ 22, Ex. I (Warehouse Line of Credit).  Flagstar wired the Smiths' loan funds to Chicago Title

16  Company, the escrow agent used in connection with the Loan.  *Id.*   As payment for the Loan and in

17  exchange for WAM's endorsement of the Note to Flagstar, Flagstar then replenished WAM's line of

18  credit with Flagstar with a wire transfer of $407,799,89 on November 3, 2004, which included the

19  amount used to fund the Smiths' Loan, less certain fees and charges.  *Id.* at ¶ 23, Ex. J (Funding

20  Breakdown).  Pursuant to the Final Settlement Statement, WAM received a $590 fee for its role in the

21

22  [3] With the endorsement of the Note to Flagstar, the Deed of Trust securing the Note follows the note it secures. *See* Cal. Civ. Code § 1084 ("[t]he transfer of a thing transfers also all its incidents, unless expressly excepted; but the transfer of an incident to a thing does not transfer the thing itself."); *see*

23  *also Williston on Contracts* § 74.10 (4th Ed.) (noting that all contract rights may be assigned in the absence of clear language expressly prohibiting the assignment).   Since a security instrument is

24  incident to the debt, when the debt is transferred, the equitable right to enforce the security transfers as well.  *See Storch v. McCain*, 85 Cal.304, 306–07 (1890).  In the same vein, California Civil Code

25  § 2936 provides that the "assignment of a debt secured by mortgage carries with it the security." Civ. Code § 2936; *Domarad v. Fisher & Burke, Inc.*, 270 Cal.App.2d 543, 553 (1969); *see also Debrunner*

26  *v. Deutsche Bank Nat'l Trust Co.*, 204 Cal.App.4th 433, 442 (2012).  Accordingly, this endorsement made Flagstar the holder of the promissory note, and by virtue of that status, Flagstar became the

27  holder of the beneficial interest in the deed of trust securing that note by operation of law.

28  [4] The Note lists 5151 Troy Drive, Troy Michigan 48098, which is the same address as 5151 Corporate Drive, Troy Michigan 48098, both of which correspond with Flagstar. Flagstar Decl. ¶ 17.

FLAGSTAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS (CONVERTED TO MOTION FOR SUMMARY JUDGMENT)

origination of the Loan.  *Id*. at ¶ 24, Ex. K, p. 2, ln. 810.   The Loan closed on November 3, 2004 and all of the final documents related to the closing of the Loan were to be sent to Flagstar.  *See id*. at ¶¶ 21-25, Ex. H.

Moreover, Flagstar performed the underwriting for the Loan and approved the Loan to close (after all conditions cleared).  *Id*. at ¶ 25.  Flagstar was involved in all aspects of originating the Loan, including final closing and post-closing.  *Id*.  As evidenced by the endorsement on the Note to Flagstar, Flagstar immediately became the holder of the Note and owner of the Loan until the ownership interest in the Loan was transferred to CitiBank, N.A., as evidenced by an Assignment of Deed of Trust dated August 3, 2016 and recorded on August 11, 2016.  *Id*. at ¶ 26, Exs. L (MERS Milestone), Ex M (August 11, 2016 Assignment of Deed of Trust).  Flagstar serviced the Loan from inception to July 11, 2009 when the servicing was transferred to Carrington Mortgage Services, LLC.  *Id*. at ¶ 30, Ex. O (Flagstar to Carrington Notice).[5]

Thus, Flagstar's conduct fits squarely within the conduct associated with a lender at loan origination, which is confirmed by OTS and OCC regulations, guidance, and case law.  As set forth below, regulators and courts both interpret this type of correspondent warehouse lending as synonymous with "originating," and treat the funding entity (in this case, Flagstar) as the original lender and creditor for purposes of HOLA preemption.

### 2. The OTS, OCC, and HUD Each Consider Correspondent Lending, Warehousing, and Table-Funding as Synonymous with Origination

The OTS, in promulgating regulations concerning the general lending powers of a federal thrift, expressly acknowledged and authorized the practice of brokering and warehousing in connection with a thrift's power to make a residential mortgage loan. 12 C.F.R. § 560.30 ("Pursuant to section 5(c) of [HOLA], 12 U.S.C. 1464(c), a Federal savings association may make, invest in, purchase, sell, participate in, or otherwise deal in (***including brokerage or warehousing***) all loans and investments allowed under section 5(c) of the HOLA") (emph. added).  Indeed, the OTS viewed warehousing as "a low cost method of ***increasing mortgage origination*** volume without increasing

---

[5] Flagstar resumed servicing the Loan on April 19, 2011. *Id*. at ¶ 31, Ex P. (Carrington to Flagstar Notice).  The servicing rights were transferred from Flagstar to Fay Servicing, LLC effective August 4, 2015.  *Id*. at ¶ 32, Ex. Q (Flagstar to Fay Notice).

loan origination staff and incurring additional fixed costs."  OTS Examiner Handbook: MORTGAGE

BANKING, 2008 WL 7675049 at *10-11 ("[s]avings associations often use third parties, such as

mortgage brokers or correspondents, and other third-party sellers such as affinity groups **to originate**

**mortgage loans.**") (emph. added).   The guidance goes on to explain that during wholesale loan

production, brokers and loan correspondents help augment loan production, and that "many broker

loans are table-funded, wherein they are closed in the broker's name and subsequently transferred to

the funding lender.") (emph. added).[6]  Accordingly, the OTS expressly contemplated warehousing,

table-funding, and correspondent lending as directly within HOLA's purview.

In an interpretive letter issued only months before the Smiths obtained their Loan, the OCC

likewise stated:

> 'Table funding' refers to a practice whereby a mortgage loan is funded
> at settlement by an advance of loan funds and a contemporaneous
> assignment of the loan is made to the person advancing the funds. ***We
> consider a national bank that provides funding and takes assignment
> of a loan pursuant to a 'table funding' arrangement to be the lender.***
> Under the Order and our preemption rule, the GFLA would not apply to
> a national bank that uses this type of arrangement to make loans….

OCC, Interpretive Letter # 1002, p. 2 (May 13, 2004) (emph. added); *see also id.* at n. 3 (explaining

that the HUD "regulations implementing the Real Estate Settlement Procedures Act, 12 U.S.C. 2601

et seq., define a lender in a table funding arrangement as the person 'to whom the obligation is initially

assigned at or after settlement' who is not necessarily the person in whose name the loan is closed.")

(*citing* 12 C.F.R. § 3500.2(b)).

### 3.   Courts Also Consider Correspondent Lending, Warehousing, and Table-Funding as Functionally Equivalent to Originating

Moreover, the handful of courts that have had occasion to analyze whether HOLA preemption

attaches in this scenario—*i.e.* when a loan was "table-funded" or originated in the name of a

correspondent lender like WAM and immediately sold to a federal thrift—have all held that it does.

The majority have also made it clear that HOLA preemption survives Dodd-Frank.

### a.   *In Re Thomas I*

In *In re Thomas,* 447 B.R. 402, 407 (Bankr. D. Mass. 2011), the plaintiff brought an adversary

---

[6] The guidance also states that the "lines between brokers and correspondences are not readily distinguishable."  *Id.* at 10.

complaint against Flagstar and the loan broker (Allied Home Mortgage Capital Corporation) ("Allied") alleging her loan transaction violated the Massachusetts Predatory Home Loan Practices Act.  *Id.*  Flagstar moved to dismiss on the grounds that plaintiff's claims were preempted by HOLA.  *Id.*  The court denied Flagstar's motion because the loan documents attached to the complaint indicated that Allied, not Flagstar, was the original lender.  *Id.* at 407.  Addressing Flagstar's argument that Flagstar "table-funded" the loan and was therefore the original lender, the court stated: "Loans which are table-funded by federal thrifts would be subject to the federal preemption scheme of HOLA," but "my field of vision with respect to a motion to dismiss is confined to the pleadings and the attachments thereto." *Id.* at 407-08 (*citing* OCC, Interpretive Letter # 1002 (May 13, 2004)), *supra*, (finding that a national bank would be considered the lender, and not subject to state anti-predatory lending laws, in a loan transaction table-funded by the national bank with a non-national bank broker listed as the lender).  In analyzing the OCC's guidance, the court said: "In light of the OTS' policy of maximizing the preemptive effect of its regulations, it follows that the OTS, like the Comptroller of the Currency, would conclude that a federal thrift in a table-funded transaction is considered to be the lender for purposes of preemption analysis. *Id.*, n. 4 (*citing Aguayo v. U.S. Bank,* 658 F.Supp.2d 1226, 1234 (S.D. Cal. 2009) (noting the OCC's view that the similarity between the preemption regimes of the National Bank Act and HOLA "warrants similar conclusions about the applicability of state laws to the conduct of the Federally authorized activities of both types of entities.").  With respect to the implication of Dodd-Frank, the court noted that, "[b]ecause the plaintiff's loan was consummated before Dodd–Frank was enacted, the new preemption standard is inapplicable to this case." *Id.*

   **b.**   ***In Re Thomas II***

   Flagstar and CitiMortgage (the subsequent note holder) then moved for summary judgment using evidence that Flagstar did, in fact, "table-fund" the plaintiff's loan.  *In re Thomas*, 476 B.R. 691, 694 (Bankr. D. Mass. 2012), *aff'd sub nom. Thomas v. CitiMortgage, Inc.*, 2013 WL 4786060 (D. Mass. Sept. 5, 2013).   In granting Flagstar's motion for summary judgment based on HOLA preemption, the court held:

> The only conceivable basis for not considering Flagstar the original lender is the fact that it table-funded the loan. None of the statutes or regulations thus far analyzed defines "table-funded." However, regulations promulgated by the Secretary of the Department of Housing

11

and Urban Development pursuant to her authority under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617 define table funding as a "settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." *See, e.g.,* 24 C.F.R. § 3500.2. ***This definition makes a table-funder the functional equivalent of the original lender….Thus I conclude that Flagstar, having funded the loan and on the next business day taken possession of the assigned note, is the original lender of the 2006 loan to Ms. Thomas***.

*Id.* at 698 (emph. added).   In coming to this conclusion, the court noted that, just as in this case, Flagstar sent the plaintiff a "Purchase Commitment Letter" on Flagstar's letterhead, "informed [plaintiff] that the proposed refinancing met the requirements for Flagstar to purchase the loan subject to certain conditions set forth in the letter," "noted that the rate lock would expire on May 19, 2006," "identified Allied as the 'originator,'" and "notified [plaintiff] that the servicing of her loan was being assigned or transferred to Flagstar." *Id.* at 694.  The note at issue also contained an undated notation on the lower left hand corner stating that the note was assigned without recourse to Flagstar.  *Id.* Again, the court noted that, "[b]ecause the transaction at issue here was consummated before the enactment of Dodd–Frank, the cutbacks on HOLA's preemption are not applicable to this case." *Id.* at 695, n. 17.

### c.     *In Re Thomas III*

Plaintiff appealed the Bankruptcy court's summary judgment decision to the U.S. District Court, which then re-examined "table funding" as it applies to the preemption analysis.  *See Thomas v. CitiMortgage, Inc.*, 2013 WL 4786060, at *6 (D. Mass. Sept. 5, 2013).   The District Court held:

**Although there is no decision directly on point, the Court sees no reason why a bank table-funding a loan should not also be considered the original lender for purposes of HOLA preemption.** On its face, the relevant OTS regulation gives federal savings associations the power to "extend credit as authorized under federal law ... without regard to state laws purporting to regulate or otherwise affect their credit activities." § 560.2. In a table-funded transaction, the table-funder is the one extending credit in every sense except name. The logic behind allowing federal savings associations to extend credit without regard to state laws would be thwarted by an alternative interpretation. That interpretation is consistent with a number of agency interpretations in other contexts that have treated a bank or savings association that table-funds a loan as the original lender. For example, the Office of the Comptroller, addressing preemption under the National Bank Act, has taken the position that it "consider[s] a national bank that provides funding and takes assignment of a loan pursuant to a 'table funding' arrangement to be the 'lender' for purposes of preemption. Comptroller

of the Currency, Interpretive Letter # 1002 (May 13, 2004). The Department of Housing and Urban Development ("HUD") has also recognized that the true "lender" in a table-funded mortgage transaction is the funding entity, not the entity in whose name the loan closes. *See* 24 C.F.R. § 3500.2(b) (definition of "Lender"). For purposes of HUD regulations, in a table-funded transaction, "the lender is the person to whom the obligation is initially assigned at or after settlement." *Id.* ***In other words, the "lender" is the table-funding entity, not the entity in whose name the loan closes.***

*Id.* (emph. added).   The court found that Flagstar had, in fact, table-funded the plaintiff's loan, emphasizing that: (1) Flagstar approved the loan and issued a Rate Lock Confirmation and Purchase Commitment Letter, (2) the loan was subject to several conditions imposed by Flagstar, (3) the note was assigned and delivered to Flagstar shortly after execution, without recourse from the "lender" listed on the note; and (4) Flagstar wired money to another bank in connection to the loan.  *Id.* at *6-7 ("the inquiry generally centers on the language of 24 C.F.R. § 3500.2—who provided the loan funding and who had the real interest in the loan. The latter inquiry is sometimes phrased as a question of whether the alleged broker was obligated at the time of closing to assign the loan to the entity advancing the fund.").   "The circumstances of the transfer of the loan from Allied to Flagstar are analogous to other loans that have been found to be table-funded…. Flagstar underwrote the loan, and after the loan closed Allied immediately assigned it to Flagstar. Accordingly, there is no genuine dispute of fact as to whether Flagstar table-funded the loan. In short, Flagstar extended credit directly to Thomas."  *Id.*  (*citing Reagan v. Racal Mortgage, Inc.,* 135 F.3d 37 (1st Cir.1998)).[7]   The court reiterated that: "because this transaction was consummated prior to the enactment of the Dodd–Frank Act, the changes to HOLA's preemptive effect are not applicable to this case."  *Id.* at *3, n. 2.

### d.   *Stolz v. OneWest Bank*

In *Stolz v. OneWest Bank*, plaintiff signed a promissory note in favor of Premier Mortgage

---

[7] Other courts agree that table funding is a "settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds.' In a table-funded loan, the originator closes the loan in its own name, but is acting as an intermediary for the true lender, which assumes the financial risk of the transaction." *Easter v. Am. W. Fin.*, 381 F.3d 948, 955 (9th Cir. 2004); *Culpepper v. Inland Mortg. Corp.*, 132 F.3d 692, 694–95 (11th Cir. 1998) ("Although Premiere was the nominal creditor on the loan documents, Premiere did not fund the Culpeppers' loan. Instead, Inland advanced the funds and Premiere contemporaneously assigned the loan to Inland. This type of brokerage arrangement is known as "table funding;" thus, Inland, not Premiere, owned the Culpeppers' mortgage from the outset.").

Group Inc. ("Premier"), and granted Premier a deed of trust.  2012 WL 135424, at *1 (D. Or. Jan. 13, 2012), *report and recommendation adopted sub nom. Stolz v. OneWest Bank, FSB*, 2012 WL 1093712 (D. Or. Mar. 30, 2012). "Contemporaneous with closing of the transaction, Premier transferred servicing rights of the loan to IndyMac Bank, FSB [], although that assignment was never recorded. IndyMac Federal Bank FSB [] subsequently transferred its servicing rights to OneWest." *Id.*  The property securing the loan was eventually sold at a non-judicial foreclosure sale, prompting plaintiffs to file suit.  *Id.* at *2.  OneWest, a federal thrift, argued that plaintiffs' state law claims were preempted by HOLA.  *Id.*  Plaintiffs disagreed, claiming that the original lender was Premier, an Oregon corporation, and not a federal thrift subject to HOLA at the time of the initial loan. *Id.* at *9.  Rejecting plaintiffs' argument and applying HOLA preemption, the court stated the "distinction to be inconsequential, however, considering that '[o]n December 7, 2007, Premier transferred its interest in Ms. Stolz's loan to IndyMac, F.S.B.,' *i.e.,* Premiere transferred its interest to a federal savings bank subject to HOLA three days after [plaintiff] refinanced her property…." *Id.*

The California Court of Appeal has commented favorably on *Stolz* and the view that the table-funder is the original lender entitled to preemption:

> [C]ourts have found preemption where a loan originated by a state lender was immediately sold on the secondary market…These cases illustrate some of the changes in mortgage lending brought about by widespread securitization since the 1980's. … The fact that federal thrifts participate in that market has long been recognized, and their participation has been subject to federal regulation. As we have explained, one of the purposes of the OTS preemption regulation was to allow federal thrifts to exercise their lending powers in accordance with a uniform federal scheme of regulation. The federal thrifts' participation in the secondary market as buyers, sellers, or investors is subject to federal regulation.

*Akopyan v. Wells Fargo Home Mortg., Inc.*, 215 Cal.App.4th 120, 142–43 (2013) (*citing Fidelity Federal Sav. and Loan Assn. v. de la Cuesta, supra,* 458 U.S. 141, 155, n. 10 ("The marketability of a mortgage in the secondary market is critical to a savings and loan, for it thereby can sell mortgages to obtain funds to make additional home loans")); 48 Fed. Reg. 23040, 1983 WL 131461 (May 23, 1983) (confirming the long standing position of the Federal Home Loan Bank Board (the predecessor to OTS), that federal thrifts may buy "only those loans that it may make.").  *Akopyan* went on to explain that, as indicated above, "the OCC has recognized that banks make loans both directly and

1   indirectly, as in 'table funding' arrangements, where the bank funds the loan at settlement when it

2   takes assignment of the loan. **The banks' power to purchase loans also is within the scope of the**

3   **preemption regulation if the loans are purchased as part of a real estate lending program.**" *Id.*

4   (*citing* OCC, Interpretive Letter # 1002 (May 13, 2004); Interpretive Letter # 1016 (Feb. 2005) (emph.

5   added)).

6       Accordingly, there can be little doubt that both regulators and courts view brokering,

7   warehousing, and table-funding by a federal thrift as equivalent to "origination" for purposes of HOLA

8   preemption.  As a result, the undisputed facts demonstrate that Flagstar is entitled to preemption as the

9   Smiths' lender.  Further, because Flagstar entered into a contract with the Smiths "before July 21,

10  2010," that preemption is preserved pursuant to 12 U.S.C. § 5553.

11  **C.    There Can Be No Dispute That Flagstar "Entered Into" a Contract with the Smiths at
        the Time of Origination**

12      As set forth above, Section 5553 preserves HOLA preemption for contracts "***entered into on***

13  ***or before July 21, 2010, by … Federal savings associations.***"  12 U.S.C. § 5553 (emph. added);

14  *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 554 (4th Cir. 2013) ("Because 12 C.F.R. §

15  560.2 was in effect when the loan contract was entered into, it governs here."); *Meyer v. One W. Bank,*

16  *F.S.B.*, 91 F.Supp.3d 1177, 1181 (C.D. Cal. 2015) ("[c]ontracts formed before the Act's effective date

17  are, therefore, subject to the preemption rules applicable at the time of formation.  Here, Plaintiff

18  obtained her mortgage in 2007, well before Dodd–Frank took effect, and subject to the HOLA

19  preemption regime of the time."); *Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at *15 (C.D.

20  Cal. Jan. 11, 2012), *vacated*,  2012 WL 13014626 (C.D. Cal. Apr. 18, 2012) ("[s]ection 1043 of the

21  statute specifically states that contracts formed prior to the passage of Dodd–Frank will be governed

22  by the rules and regulations in place prior to its enactment…the court concludes that the statute is

23  properly interpreted to provide that claims related to contracts formed prior to the enactment of Dodd–

24  Frank are subject to the preemption analysis in effect at that time."); *see also Gorton v. Wells Fargo*

25  *Bank NA*, 2013 WL 12128775, at *3 (C.D. Cal. June 3, 2013); *Deschaine v. IndyMac Mortg. Servs.*,

26  2014 WL 281112, at *8 (E.D. Cal. Jan. 23, 2014), *aff'd*, 617 F. App'x 690 (9th Cir. 2015); *Copeland-*

27  *Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132, 1138 (D. Or. 2011).

28

1       Here, there can be no dispute that the Smiths entered into a contract—*i.e.* the Note and Deed

2   of Trust—with Flagstar in 2004, well before the implementation of Dodd-Frank.

3       ***First***, Plaintiffs concede the point, alleging unequivocally that they entered into a contract with

4   Flagstar. FAC ¶ 39 (alleging Flagstar was "contractually obliged by each [Deed of Trust] to comply

5   with applicable law, including Section 2954.8(a)[.]"). Plaintiffs maintain that they, and members of

6   the Subclass, performed under their respective Deed of Trusts and that Flagstar "breached their

7   contracts with Plaintiffs and Sub-Class members by failing to pay interest on their escrow accounts."

8   *Id.* at ¶¶ 40-41. Accordingly, Plaintiffs cannot genuinely dispute that they entered into a contract with

9   Flagstar prior to Dodd-Frank.[8]

10       ***Second***, the undisputed facts confirm the existence of a contract between Flagstar and the

11   Smiths pre-dating Dodd-Frank. Specifically, they show that WAM immediately assigned the Loan to

12   Flagstar, meaning Flagstar replaced WAM as the "Lender" pursuant to the express terms of both the

13   Note and Deed of Trust. *See, e.g.*, Flagstar Decl. ¶¶ 9, 13, 26, Ex. C (Note) ("Lender or anyone who

14   takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note

15   Holder.'"); *id.* at ¶¶ 9, 18, Ex. D (Deed of Trust) at § 13 ("The covenants and agreements of this

16   Security Instrument shall bind (except as provided in Section 20) and benefit the successors and

17   assigns of Lender."). Indeed, it is hornbook law that the assignee (Flagstar) steps into the shoes of the

18   assignor (WAM). *See* 1 Witkin, Summary 11th Contracts § 758 (2018) ("The assignee 'stands in the

19   shoes' of the assignor, taking his or her rights and remedies, subject to any defenses that the obligor

20   has against the assignor prior to notice of the assignment."); *Bank of Am., N.A. v. Mitchell*, 204

21   Cal.App.4th 1199, 1207 (2012) (same); *see also* Law of Fraudulent Transactions, Alces, § 8:22 (2019)

22   ("The prevailing view is that the lender-borrower relationship is a contractual one."); *Wagner v.*

23   *Benson*, 101 Cal.App.3d 27, 33 (1980) (holding covenant of good faith and fair dealing applies "in the

24   contractual relationship between a borrower and lender.").

25   

26   [8] Curiously, Plaintiffs argued in their opposition to Flagstar's motion to dismiss that "no such contract
exists in this case," and "although the Smiths' DoT originated prior to July 21, 2010, Flagstar is not a

27   party to that contract." Opp. at 3:7-12. Of course, if that were true, Plaintiffs would have no claim
for breach of contract in the first place. In any event, "[a] party cannot create a genuine issue of
material fact to survive summary judgment by contradicting his earlier version of the facts."

28   *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).

To the extent Plaintiffs argue (as they did in their opposition), that the assignment of the Note to Flagstar "would still not apply because such agreements would not involve contractual rights for section 5553 to preserve against the HOLA amendments," they fail to provide any reasoning or authority for such a convenient conclusion.  *See* Opp. at 11:12-13.[9]  To the contrary, courts have applied Section 5553 to this same situation—*e.g.* where, while the federal thrift is not named as the lender in the note or deed of trust, the thrift immediately acquired and serviced the loan prior to Dodd-Frank.  In  *Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249, 1256 (D. Or. 2012), for example, the plaintiffs executed a note and deed of trust in 2008 in favor of Greater Northwest Mortgage Inc.  In moving to dismiss,[10] Flagstar noted that Northwest immediately sold the Note to Flagstar.  *See* 2012 WL 4742250.  In granting Flagstar's motion, the court noted: "because the [plaintiffs] obtained their loan and signed the trust deed in 2008, the OTS regulations regarding preemption, 12 C.F.R. § 560.2, control the resolution of this case."  *Id*. at 1256, n.5.  In other words, the court assumed that for the purposes of Section 5553, the plaintiffs and Flagstar entered into a contract prior to the enactment of Dodd-Frank despite the fact that Flagstar was not listed as the lender on the plaintiffs' note or deed of trust.  *See also In re Thomas*, 447 B.R. at 407; *In re Thomas,* 476 B.R. at 695; *Thomas v. CitiMortgage, Inc.*, 2013 WL 4786060, at *6, *supra*.

Accordingly, there can be no genuine dispute that a valid contract was formed between Flagstar, on the one hand, and the Smiths on the other prior to Dodd-Frank.  As a result, there can also be no dispute that Section 560.2 governed Flagstar's conduct with respect to the loan pursuant to Section 5553 of the Dodd-Frank Act, and therefore preempted Section 2954.8.

### D.    CONCLUSION

The undisputed facts demonstrate both (1) that Flagstar is entitled to preemption as the Smiths' lender, and (2) a valid contract existed between the Smiths and Flagstar prior to the Dodd-Frank Act.  Accordingly, the Smiths' loan is subject to HOLA's preexisting "field preemption" standard both prior

---

[9] Plaintiffs argued: "Accordingly, even if Flagstar had been a party (or a successor to a party) to the Smiths' DoT agreement, or entered into some loan servicing agreement prior to Dodd-Frank's enactment date in 2010 – it did not – section 5553 would still not apply because such agreements would not involve contractual rights for section 5553 to preserve against the HOLA amendments." Opp. at 11:10-17.

[10] Plaintiffs alleged that HOLA preempted Oregon's non-judicial foreclosure laws.

1   and subsequent to Dodd-Frank.  The Smiths' claims are therefore preempted, and must be dismissed.

2

3   Date:  April 18, 2019                          Respectfully submitted,

4

5                                                  **MCGUIREWOODS LLP**

6

7                                                  By: _/s/ David C. Powell_
                                                       David C. Powell
8                                                      Attorney for Flagstar Bank, FSB

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FLAGSTAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS (CONVERTED TO MOTION
FOR SUMMARY JUDGMENT)

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on April 18, 2019, a copy of the foregoing pleading, with any and all

3

4    attachments, was filed electronically with the clerk of court via ECF, which will serve all counsel of

5    record, and served via First-Class Mail to any party not filing ECF, postage prepaid.

6       This the 18th day of April, 2019.

7

8

9                                    By: */s/ David C. Powell*
                                          David C. Powell
10                                        Attorney for Flagstar Bank, FSB

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FLAGSTAR'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS (CONVERTED TO MOTION FOR SUMMARY JUDGMENT)