IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOWELL and GINA SMITH, husband and wife, and WILLIAM KIVETT, individually, and on behalf of others similarly situated,

Plaintiffs,

v.

FLAGSTAR BANK, FSB,

Defendants.

No. C 18-05131 WHA

**ORDER GRANTING CONVERTED MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this putative class action for breach of contract and violation of Section 17200 of the California Business & Professions Code, defendant's motion to dismiss was converted into a motion for summary judgment. For the following reasons, defendant's converted motion for summary judgment is **GRANTED**.

## STATEMENT

A previous order detailed the facts of this action (Dkt. No. 37). In brief, plaintiffs Lowell and Gina Smith and William Kivett brought this putative class action alleging breach of contract and violation of Section 17200 of the California Business & Professions Code. All claims arise out of defendant Flagstar Bank's failure to pay interest on escrow accounts when Flagstar serviced plaintiffs' respective loans under deeds of trust between 2011 and 2015. California Civil Code § 2954.8(a) required payment of interest on such accounts. Flagstar

moved to dismiss asserting that Section 2954.8(a) was preempted by the Home Owners' Loan Act (HOLA) (Dkt. No. 26 at 9).

**A.     Order Converting Motion To Dismiss To Summary Judgment.**

An order issued relying on *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018), to conclude that the enactment of the Dodd-Frank Act ended the reign of HOLA field preemption and that Flagstar does not continue to enjoy the previous HOLA field preemption standard after Dodd Frank's effective transfer date of July 21, 2011. Plaintiff Kivett, who obtained his mortgage in September 2012, therefore, should have been paid all interest payments due after Dodd-Frank's effective date (Dkt. No. 37 at 6).

As to the Smiths, however, the matter remained murky. The Smiths conceded that HOLA field preemption applied pre-Dodd Frank. Still, after Dodd-Frank, it was not clear whether the Smiths' contract continued to enjoy HOLA preemption. The issue stemmed from whether Dodd-Frank's contract preservation provision, 12 U.S.C. § 5553, applied to the Smiths' contract. Section 5553 preserved the application of the original HOLA field preemption scheme that existed prior to the enactment of Dodd-Frank for "*any contract entered into* on or before July 21, 2010 *by national banks*, Federal savings associations, or subsidiaries" (emphasis added). The Smiths had obtained their mortgage in October 2004, but a factual dispute arose over whether the Smiths had "entered into" a contract with a "national bank" (Dkt. No. 37 at 7). Specifically, the matter turned on how broadly to define the phrase "any contract entered into" (*ibid*).

Flagstar sought judicial notice of the Smiths' promissory note to establish that Flagstar "participated in the origination of the Smiths' loan and became its original servicer immediately after origination" (Dkt. No. 30 at 6 n.5). The Smiths, however, countered that the promissory note clearly identified Wholesale America Mortgage as the lender, not Flagstar (Dkt. No. 29 at 3).

Owing to the importance of this factual question and because "matters outside the pleading [were] presented to and not excluded by the court," the motion to dismiss was converted to one for summary judgment under Rule 12(d) (Dkt. No. 37 at 7). Immediate

2

discovery was allowed to answer two questions (*id*. at 7–8). *First*, to what extent Flagstar had been involved in the origination of the Smiths' mortgage. *Second*, whether a contract existed between the Smiths and Flagstar that would have preserved HOLA preemption pursuant to Section 5553.

**B.     Discovery.**

Discovery has led to further details about the origination of the Smiths' mortgage. The story of the contract is as follows.

In 2001, Flagstar entered into a Corresponding Lending Agreement with RDP Capital, Inc. d/b/a California Financial Group. The lending agreement gave Flagstar the discretion to buy mortgages from RDP if the mortgages met certain specified guidelines (Dkt. No. 55 at 2). The lending agreement also made clear that "Flagstar intend[ed] to sell the Mortgage Loans to investors in the secondary market" (Dkt. No. 54-6 at 8, § 3.1(j)). The agreement stated that RDP was an "independent contractor" and that "neither party [was] in any way authorized to make any contract, agreement, warranty, or representation, or to create an obligation, express or implied, on behalf of the other" (Dkt. Nos. 54-5 at 7, §§ 2.1, 2.2, 2.4(f); 54-6 at 11, § 7.1).

The agreement also specified that RDP "shall originate all Mortgage Loans offered for purchase under the Agreement at its offices and in its own name" (Dkt. No. 54-6 at 5, §2.2(a)). RDP was further responsible for "providing loan applications and related disclosures required by any and all Laws to loan applicants and for obtaining executed loan applications and disclosure forms" (*ibid*). All mortgage loans were to be closed "in the name of [RDP] with funds provided by [RDP]" and RDP had "the authority to sell, transfer, and assign such Mortgage Loan." In March 2004, RDP provided Flagstar with a Certificate of Amendment of Articles of Incorporation that indicated that it had changed its name to Wholesale America Mortgage, Inc. (Dkt. Nos. 54, Exh. B; 55 at 2).

In October 2004, the Smiths obtained a home mortgage from Wholesale America Mortgage (Dkt. No. 55 at 2). The home mortgage listed Wholesale America Mortgage as the "Lender" but was executed on Flagstar form (*id*. at 2–3). Specifically, the home mortgage had two associations with Flagstar. *First*, the promissory note executed had a footnote on the

3

bottom of each page throughout which indicated Flagstar affiliation (it stated "Flagstar modified version of Fannie Mae Uniform Instrument Form 3520" (Dkt. No. 54-8)). *Second*, the signatory line stated:

> "PAY TO THE ORDER OF:
>
> FLAGSTAR BANK, FSB WITHOUT RECOURSE
>
> WHOLESALE AMERICA MORTGAGE, INC."

In December 2004, less than one month after executing the mortgage, Flagstar purchased the loan from Wholesale America Mortgage in accordance with the 2001 Lending Agreement (Dkt. No. 55 at 2, 4). The Smiths soon received a letter informing them that their loan had been purchased and that they were to make all their payments to Flagstar (Dkt. No. 54-13).

With the benefit of this discovery and further briefing on summary judgment (Dkt. Nos. 52, 55), this order follows.

**ANALYSIS**

Section 5553 is entitled "[p]reservation of existing contracts." Its purpose is to maintain preemption for the contracts already enjoying preemption as of July 21, 2010, in order to avoid disruptive contract administration. In light of this purpose, the question becomes whether the Smith's contract was subject to preemption prior to July 21, 2010? The parties concede that it was. Accordingly, this order holds that the Smiths' claims are preempted by HOLA.

The Smiths' claims stem from a deed of trust which provided for the payment of interest on escrow account funds if "[a]pplicable [l]aw requires" (Dkt. No. 26-1 at § 20). State law so required. Cal. Civ. Code § 2954.8(a). The parties conceded that HOLA field preemption, a federal law, preempted this state law until 2011. Accordingly, until 2011, the Smiths' claims were preempted and "applicable law" did not require interest payments on escrow account funds.[1]

---

[1] This order notes that our court of appeals has stated that "[w]hether, and to what extent, HOLA applies to claims against a national bank when that bank has acquired a loan executed by a federal savings association is an open question." *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 970–71 (9th Cir. 2017). Judge Edward Chen recently certified this question for interlocutory appeal. In contrast to our parties

4

In 2011, Dodd-Frank abolished HOLA field preemption. Nevertheless, recognizing the disruptive effect tinkering with existing law would have on existing contracts, Dodd-Frank included a provision which preserved the application of federal rules preempting certain state laws against contracts entered into before July 21, 2010 by a national bank. 12 U.S.C. § 5553. Specifically, Section 5553 provided in full:

> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law *to any contract entered into on or before July 21, 2010, by national banks, Federal savings associations,* or subsidiaries thereof that are regulated and supervised by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, respectively.

12 U.S.C. § 5553 (emphasis added). In other words, contracts entered into before July 21, 2010, remained bound by the law to the same extent as it was prior to the enactment of Dodd-Frank. Notably, Section 5553 did not split hairs. If the contract had been entered into prior to July 21, 2010, by a national bank, HOLA preemption applied.

The Smiths make two arguments as to why Section 5553 should not apply to their contract. *First*, Flagstar never had been a party to any contract with the Smiths and therefore Section 5553 does not apply to this contract. *Second*, Section 5553 must be construed in accordance with the overall intent of Dodd-Frank to end field preemption and therefore HOLA preemption no longer applied.

Both arguments are unavailing. As to the first argument, when Flagstar took over the contract, Flagstar "entered into" it. There is no indication whatsoever that the phrase "entered into" is limited to the original signatories or original parties to the contract. The Smiths argue that Flagstar merely purchased the mortgage from Wholesale America Mortgage, but never

---

here, Judge Chen held that "HOLA preemption [applies] only to conduct occurring before the loan changed hands from the federal savings association or bank to the entity not governed by HOLA." *McShannock v. JP Morgan Chase Bank N.A.*, No. 18-CV-01873-EMC, 2018 WL 6439128, at *8 (N.D. Cal. Dec. 7, 2018) (internal quotation marks and citation omitted).

5

"entered into" any contract with the Smiths as a party. Two reasons support a broader construction of "entered into."

*First*, the practice of original signatories selling the mortgage in a secondary market is common. Chaos would have resulted had national banks had to distinguish between loans it acquired (as here) versus those it originated. Both types were bundled and sold. It would have been well near impossible to unpack the bundler to determine which enjoyed preemption and which did not. We must give Section 5553 a practical construction.[2]

*Second*, the dictionary definitions undermine the Smiths' narrow interpretation. "In determining the 'plain meaning' of a word, we may consult dictionary definitions, which we trust to capture the common contemporary understandings of the word." *United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013). Although the Dodd-Frank Act uses the phrase "entered into" dozens of times, the Act never defined the phrase.

Yet, two major dictionaries support a broad construction of the phrase. One major dictionary defined "enter into" as "to make oneself a party to or in; to form or be part of; to participate or share in." *Merriam-Webster's Collegiate Dictionary* 416 (Frederick C. Mish ed., 11th ed. 2003). Similarly, another major dictionary defined "enter into" in part as "subscribe to; bind oneself by (an agreement, etc.)." *The Oxford American Dictionary and Language Guide* 320 (Frank R. Abate ed., 1999). By contrast, there is no support for "entered into" being *solely* synonymous with original execution. Accordingly, the Dodd-Frank Act had to have been written with this assumption in mind.

As to the Smiths' second argument, the Smiths look to the purpose of Dodd-Frank generally. They argue that one of Dodd-Frank's main goals was to prevent another mortgage crisis. Dodd-Frank dissolved the Office of Thrift Supervision and retroactively terminated all federal field preemption of state banking laws because they had "actively created an environment where abusive mortgage lending could flourish without State controls." S. Rep.

---

[2] The notice letter sent to the Smiths informing that Flagstar had purchased the mortgage confirmed that it is common in the banking industry for the original signatory to immediately turn around and sell the mortgage in a secondary market. Specifically, the letter stated that "[a]s a regular practice, most loans are sold in the secondary marketplace" (Loeser Decl., Exh. 3).

No. 111-176, at 175 (2010). According to the Smiths, therefore, to read Section 5553 broadly would undercut the purpose of Dodd-Frank, which specifically aimed to protect state consumer financial laws like Section 2954.8(a).

That argument, however, ignores that Section 5553 was meant to offset the effects of sweeping legislation and "intended to provide stability to existing contracts." S. Rep. No. 111-176, at 175 (2010). As a statute meant to "provide stability," Congress wanted Section 5553 to be read broadly, in order to balance the effects of such an expansive legislation. By preserving contracts, customers are protected from shifting costs and uncertainty in the marketplace. Maintaining existing contracts, with the laws in effect at the time, reinforce predictability and reliability. Since HOLA preemption applied to this contract before Dodd-Frank, none of these values support ending the previously applied preemption. Had that been the purpose of Section 5553, it would have said so.

Here, Flagstar has been imminently involved with this contract from the beginning. Its forms had been used and its name had been in the signature line. Indeed, the parties do not dispute that Wholesale America Mortgage intended to sell this mortgage to Flagstar from the beginning. Notwithstanding Flagstar's involvement from the beginning, once Flagstar acquired the Smiths' mortgage in 2004, Flagstar "entered into" the contract sufficient to trigger Section 5553. Accordingly, HOLA preemption remained with the Smiths' contract after Dodd-Frank, thereby preempting the Smiths' claims.

## CONCLUSION

For the foregoing reasons, Flagstar's converted motion for summary judgment as to the Smiths is **GRANTED**. The claims brought by the Smiths are dismissed. As to plaintiff Kivett, class certification, summary judgment, and trial shall proceed as scheduled.

**IT IS SO ORDERED.**

Dated: June 11, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7