IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIAM KIVETT, individually and on behalf of others similarly situated,

    Plaintiff,

  v.

FLAGSTAR BANK, FSB, a federal savings bank, and DOES 1-100, inclusive,

    Defendant.

 /

No. C 18-05131 WHA

**ORDER GRANTING CLASS CERTIFICATION AND MOTION TO AMEND COMPLAINT**

## INTRODUCTION

In this putative class action, plaintiff moves for class certification and for new plaintiffs to intervene with leave to amend the complaint. To the extent stated herein, both motions are **GRANTED**.

## STATEMENT

California Civil Code § 2954.8(a) requires "[e]very financial institution that makes loans upon the security of real property containing only a one- to four-family residence and located in this state" to "pay interest on the amount so held to the borrower." Defendant Flagstar Bank, FSB is a federal savings bank that makes the loans covered by Section 2954.8(a).

In 2010, the enshrinement of the Dodd-Frank Wall Street Reform and Consumer Protection Act changed the federal preemption scheme for banks and federal savings associations. *See, e.g.*, Dodd-Frank Act § 1046 (codified at 12 U.S.C. § 1465). In 2018, our court of appeals relied on this change to hold that the National Bank Act — which governs

national banks — did not preempt Section 2954.8(a). *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 (9th Cir. 2018). The instant action is one of three pending actions in the wake of *Lusnak* to allege violation of Section 2954.8(a). *See also McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063 (N.D. Cal. 2018) (Judge Edward Chen); *Wilde v. Flagstar Bank FSB*, No. 18-cv-1370-LAB (BGS), 2019 WL 1099841 (S.D. Cal. Mar. 8, 2019) (Chief Judge Larry Alan Burns). Judge Edward Chen has since certified for interlocutory appeal the question of whether the Home Owners' Loan Act preempts state law claims. *McShannock v. JP Morgan Chase Bank N.A.*, No. 18-cv-01873-EMC, 2019 WL 955289, at *1 (N.D. Cal. Feb. 27, 2019).

This civil action began in April 2018, filed by Lowell and Gina Smith. The Smiths alleged that in October 2004, they had obtained a mortgage loan to finance their purchase of real property located in California. The Smiths had executed a deed of trust as security for the loan. The deed of trust called for the establishment of an escrow impound account and required that interest be paid on funds in the escrow account if doing so was required by applicable law. Flagstar then took over the servicing of the Smiths' mortgage account and remained the loan servicer until August 2015. No interest accrued on the funds (Case No. 18-02350, Dkt. No. 1).

The Smiths' complaint alleged two claims against Flagstar: (i) breach of contract, and (ii) violation of California's Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq*. In August 2018, a Rule 12 order dismissed that complaint without prejudice due to the Smiths' failure to comply with a threshold notice-and-cure requirement provided by the deed of trust. Judgment then entered in favor of Flagstar and against the Smiths (Case No. 18-02350, Dkt. Nos. 1, 38).

The Smiths quickly provided Flagstar written notice and an opportunity to cure, which Flagstar refused. Having fixed the cure issue, the Smiths filed the instant suit, alleging the same claims on the same facts as before (Case No. 18-05131, Dkt. No. 1).

In October 2018, William Kivett came in as another plaintiff. He only alleged a violation of Section 17200 (Dkt. No. 30 at 2). He alleged that he had obtained a mortgage loan from Flagstar in September 2012. Flagstar serviced his loan from the loan's inception in 2012

2

until he refinanced with another institution in April 2015. Flagstar held his money in an escrow account during that time. No interest accrued on the account. In September 2018, plaintiff Kivett gave written notice and demand for cure, which Flagstar denied (First Amd. Compl. ¶¶ 19, 22–24) (Dkt. No. 16).

In December 2018, a case management schedule set a deadline of January 30, 2019, for leave to add any new parties or to amend the pleadings (Dkt. No. 28). Rule 12 practice followed as to the Smiths but not to plaintiff Kivett. In February 2019, an order converted Flagstar's motion to dismiss into one for summary judgment under Rule 12(d).

At bottom, Flagstar's motion presented a threshold issue as to whether or not the Home Owners' Loan Act preempted the Smiths' claims. To be clear, the enactment of the Dodd-Frank Act in 2010 had generally ended HOLA preemption. Section 1043 of the Dodd-Frank Act, however, preserved HOLA's preemption scheme for any contract *entered into* on or before July 21, 2010, "by national banks, [f]ederal savings associations, or subsidiaries thereof . . . ." 12 U.S.C. § 5553. The Smiths had obtained their mortgage in October 2004.

The preemption argument veered outside the complaint. Flagstar sought judicial notice of the Smiths' promissory note to establish that Flagstar participated in the origination of the Smiths' loan and became its original servicer immediately after origination. The Smiths, however, countered that the deed of trust clearly identified Wholesale America Mortgage as the lender, not Flagstar. Owing to the importance of this factual question and because "matters outside the pleading [were] presented to and not excluded by the court," the motion to dismiss became one for summary judgment (Dkt. Nos. 26-1, 29, 37).

Following discovery and further briefing, summary judgment issued in favor of Flagstar (Dkt. No. 63). In brief, the order hewed to a practical construction of the Dodd-Frank Act's phrase "entered into," determining that even though Flagstar had not *directly* entered into the contract with the Smiths, it sufficed that Flagstar had participated in the origination of the Smiths' loan in 2004. Put simply, the Smiths' claims were still preempted by the Home Owners' Loan Act. With the Smiths out of the picture, the sole surviving plaintiff and claim in

3

this action became plaintiff Kivett and his claim under Section 17200. This brings us to the two instant motions.

*First*, plaintiff Kivett seeks to certify a single class of 125,189 Flagstar customers who, from April 18, 2014, onward, have not received two percent interest on the amounts Flagstar held in their mortgage escrow accounts (Dkt. No. 65). More specifically, plaintiff Kivett seeks to certify the following class pursuant to Rule 23(b)(3):

> All persons who on or after April 18, 2014 had mortgage loans serviced by Flagstar Bank FSB ("Flagstar") on 1–4 unit residential properties in California and paid Flagstar money in advance to hold in escrow for the payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, but did not receive interest on the amounts held by Flagstar in their escrow accounts (excluding, however, any such persons whose mortgage loans originated on or before July 21, 2010).

The class plaintiff Kivett seeks to represent will be within the four-year statute of limitations counting from the filing of the complaint in the *first* action. The proposed class would also exclude the mortgage loans that originated before July 21, 2010, for which the claims continue to be preempted. Flagstar opposes plaintiff Kivett's motion for class certification, training all its fire on one Rule 23 element: predominance.

*Second*, plaintiff Kivett also moves for Bernard and Lisa Bravo to intervene in this action and to amend the complaint. The primary purpose for this motion is to add a class member *currently* serviced by Flagstar to ensure standing for an injunction and a class under Rule 23(b)(2), as plaintiff Kivett has not been a Flagstar customer since 2015. Plaintiff Kivett moved for the Bravos to intervene on August 20. The deadline to add any new parties was January 30.

Plaintiff Kivett's instant motion for class certification only seeks certification of a class under Rule 23(b)(3). This differs from the operative complaint, which sought certification of a class under both Rule 23(b)(2) and Rule 23(b)(3) (First Amd. Cmpl. ¶ 26). Plaintiff Kivett never moved to certify a class under Rule 23(b)(2). (Even the proposed order plaintiff Kivett appended to his motion for class certification omitted any reference to Rule 23(b)(2) (Dkt. No.

4

65-1).) As such, this order will only assess certification under Rule 23(b)(3), and whether or not it is too late for new plaintiffs to intervene.

This order follows full briefing, supplemental submissions, and oral argument.

**ANALYSIS**

**1.    NOTICE-AND-CURE PROVISION.**

Before the hearing on the motions, an order requested further briefing because "the Court questions whether it reached the correct decision earlier (Case No. 18-2350, Dkt. No. 34) in holding that Section 20 [of the Smiths' deed of trust] barred the Smiths' claims" (Dkt. No. 99 at 1). To recall, before the instant action, a Rule 12 order had dismissed both of the Smiths' claims in their original action pursuant to a notice-and-cure provision. One of those claims had been for breach of contract, and the other claim had been for a violation of Section 17200. The notice-and-cure provision provided as follows (Poles Decl. ¶ 9; Exh. D § 20) (Dkt. No. 116) (emphasis added):

> Neither [b]orrower nor [l]ender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this [s]ecurity [i]nstrument or that alleges that the other party has breached any provision of, *or any duty owed by reason of, this [s]ecurity [i]nstrument*, until such [b]orrower or [l]ender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

No binding decision has ever interpreted this exact notice-and-cure provision in the context of statutory claims, and district courts have split. *Compare Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249, 1254 (D. Or. 2012) (Judge Michael Simon) *with Kim v. Shellpoint Partners, LLC*, No. 15-cv-611-LAB (BLM), 2016 WL 1241541, at *7 (S.D. Cal. Mar. 30, 2016) (Chief Judge Larry Alan Burns).

In barring *both* of the Smiths' claims, the prior order relied on Judge Beth Freeman's decision in *Giotta v. Ocwen Financial Corporation*, subsequently affirmed by our court of appeals in a non-precedential decision. No. 15-cv-00620-BLF, 2016 WL 4447150, at *4–5 (N.D. Cal. Aug. 24, 2016), *aff'd*, *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422

5

(9th Cir. 2017). Specifically, Judge Freeman interpreted the exact notice-and-cure provision, and held that various California and federal consumer protection statutes "f[e]ll squarely within the ambit of the notice-and-cure provision" because they "ar[o]se from the property inspections and [broker price opinions] obtained by [a defendant] and charged to [p]laintiffs pursuant to the terms of the [d]eed of [t]rust." *Id*. at *4. Thus despite some differences in the claims alleged, the order "saw no alternative but to" follow *Giotta* and dismiss both alleged claims (Case No. 18-2350, Dkt. No. 34 at 6).

Subsequently, Chief Judge Larry Alan Burns followed *Giotta* (and the undersigned's prior order in *Smith*). *Wilde*, 2019 WL 1099841, at *2. In brief, Judge Burns found it persuasive that "the [d]eed of [t]rust provided that Flagstar had no obligation to pay interest on the escrow account unless 'applicable law' — e.g., § 2954.8 — provides otherwise." *Ibid*. So, "Flagstar's decision not to pay interest on the account was therefore a decision made 'pursuant to' the [d]eed of [t]rust. Even if that decision was unlawful in light of § 2954.8 or constituted a breach of the contract, it was a decision made 'pursuant to' terms of that contract, and [plaintiff] was required to first give Flagstar notice and an opportunity to cure prior to bringing suit." *Ibid*.

In *McShannock v. JP Morgan Chase Bank N.A.*, however, Judge Edward Chen did not abide by the analysis in *Giotta*. 354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018). Instead, Judge Chen held that the provision did not apply to statutory claims because such claims did not arise "pursuant" to the deed of trust and the duty to pay interest was not "owed by reason of" the deed of trust. *Ibid*. The reason stemmed from a statutory duty. Judge Chen accordingly concluded that the plaintiff there did not need to comply with the notice-and-cure provision to maintain a claim for a violation arising under Section 2954.8(a).

This order finds Judge Chen's analysis in *McShannock* persuasive. The duty to comply with the law did not originate from the deed of trust — it originated from Section 2954.8(a). To the extent the provision in the deed of trust contained ambiguity, such ambiguity must be construed against the drafter of the contract, namely Flagstar. This order therefore holds that the prior order erred in dismissing the Smiths' statutory claim.

6

In this connection, since the dismissal of the claim had been erroneous, the tolling of the class claims begins from April 18, 2018, when the Smiths filed their first complaint — not August 22, 2018, when the Smiths filed their second complaint. Moreover, as to any predominance analysis, compliance with the notice-and-cure provision is irrelevant to this statutory claim, and so does not trigger any individualized inquiry.

Here, this order pauses to note that even if the notice-and-cure provision applied here, the failure of absent class members to comply with the notice-and-cure provision is excusable on the ground of futility. Flagstar has never shown a single instance of curing after receiving notice, whereas both plaintiff Kivett and the Smiths gave notice and Flagstar refused to cure. It is true that Flagstar has independently begun to cure accounts owned by third-parties for certain months, but that has nothing to do with any notice. Thus, either way, the notice-and-cure issue here is not an individual inquiry more prevalent than the common questions.

In sum, the prior *Smith* order erred when it dismissed the statutory claim under the deed of trust's notice-and-cure provision. That requirement did not apply to the statutory claim at issue here. The tolling of class claims therefore began from April 18, 2014. Furthermore, the notice-and-cure provision is not an individualized inquiry, because it is not an inquiry here at all. This order now proceeds to the instant motions.

### 2. MOTION FOR CLASS CERTIFICATION.

Class certification under Rule 23(b)(3) is a two-step process. *First*, plaintiff Kivett must show that the following four requirements of Rule 23(a) have been met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Second*, plaintiff must establish under Rule 23(b)(3) "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

United States District Court
For the Northern District of California

### A. Rule 23(a).

Flagstar does not contest that any of the Rule 23(a) requirements have been met here. Indeed, plaintiff Kivett has sufficiently established each element. The class would comprise 125,189 California borrowers, the sole claim at issue stems from Flagstar's purported obligation to pay interest on every class member's mortgage loan, and the named plaintiff suffers the identical injury as the rest of the class, namely that his escrow account never received an interest payment. Furthermore, the class definition is tailored so that no class member would be subject to HOLA field preemption or Section 17200's statute of limitations. This sufficiently satisfies the elements of numerosity, commonality, and typicality, as required by Rule 23(a)(1)–(3). This order also finds plaintiff Kivett and his counsel to be adequate representatives as required by Rule 23(a)(4).

### B. Rule 23(b)(3).

Flagstar does not contest that it is both manageable and superior to allow this case to proceed as a class action. Indeed, Flagstar's mortgage records provide current or former home addresses, phone numbers, and social security numbers for all class members, and the low individual restitution amounts are readily calculable based on Flagstar's data. What Flagstar does contest, however, is whether common issues predominate.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). An individual question is "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Ibid.* (citation and internal quotation marks omitted; brackets in original). This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common,

aggregation-defeating, individual issues." *Ibid*. (citation and internal quotation marks omitted). Plaintiff Kivett's claim meets this standard, as now discussed.

Plaintiff Kivett contends common issues predominate because the unlawfulness or unfairness of Flagstar's actions here primarily turn on whether or not Section 2954.8 obligates Flagstar to pay interest on certain mortgage loans. If so, Section 2954.8 will apply on a class-wide basis. Furthermore, the class is tailored so that none of these loans would be subject to Section 1043 of the Dodd-Frank Act and all of the interest payments are within the statute of limitations. If the Home Owners' Loan Act continues to preempt Section 2954.8 for savings associations, the preemption will, of course, apply on a class-wide basis.

Flagstar offers three responses, none persuasive. *First*, Flagstar contends individualized loan-by-loan analysis is required to determine which escrow accounts already receive interest payments. The parties agree that in January 2017, Flagstar began a rolling process of paying interest on escrow accounts when another entity owned the mortgage servicing rights of the account. So, according to Flagstar, individualized inquiries are required to determine if another entity owns the mortgage servicing rights, which in turn would create a tree of additional individualized inquiries.

Plaintiff Kivett's restitution model, however, sufficiently accounts for third-party entities owning the mortgage servicing rights of the account. More specifically, plaintiff Kivett's restitution model consists of a list of borrowers to whom interest is owed and the amount owed to each of them. For loans corresponding to third-party mortgage service rights holders, plaintiff Kivett's restitution model built in an assumption that Flagstar had paid the interest starting in January 2017, and so, for those loans, and those months, the model calculated zero outstanding interest (Dkt. No. 111 ¶ 12.d.i.–vii.). At this stage, this suffices to establish that restitution can be determined for the proposed class and can be attributed to the theory of liability. That this may lead to some differences in restitution calculations does not defeat class certification. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015), *Cert. Denied*, 136 S. Ct. 2410 (2016).

9

*Second*, Flagstar contends individualized inquiries will predominate because some accounts will not be entitled to recover restitution *at all*. For example, such accounts include class members who entered bankruptcy during the class period or were discharged in bankruptcy proceedings prior to the class period. Flagstar's argument fails to show that individual issues predominate and defeat class certification. Whether or not a class member has undergone a bankruptcy proceeding, thereby exempting its claims, is not a fact-intensive inquiry. It therefore does not preclude certification. "Although some class members may not be entitled to personally recover damages because their claims have become part of a bankruptcy estate, the common issues of law and fact regarding defendant's liability still predominate." *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 464 (N.D. Cal. 2012) (Judge Susan Illston).

*Third*, Flagstar points out that it can assert affirmative defenses against putative class members based on Flagstar's right to an offset, good faith compliance with applicable law, and waivers and modifications. Even if these questions exist, however, they do not negate the predominance of the common issues here. "[C]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2015 WL 2265972, at *3 (N.D. Cal. May 14, 2015) (Judge Jon Tigar) (*quoting Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)).

Moreover, that some loans had been modified or were subject to a forbearance, is similarly unavailing to defeat class certification at this stage. Flagstar has the documents available. Yet, Flagstar does not provide evidence that its forms of loan modification agreements or forbearance letters impact any claims. As Judge Yvonne Gonzalez Rogers held with respect to a similar argument advanced by Wells Fargo, "[u]ntil the legal implication of this defense is established, common questions continue to predominate over individual questions." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015).

In this connection, it must be noted that Flagstar provided faulty statistics for each affirmative defense. For example, Flagstar asserted that 13,066 loans were in default and 1,636

10

loans were in foreclosure, but advanced these statistics based on a borrower population of 196,706 loans — not based on the 125,189 loans limited to the class. Flagstar's statistics, therefore, could apply to loans that fell outside the statute of limitations, and therefore outside the class. Flagstar's statistics as to the applicability of any affirmative defenses do not persuade to defeat certification.

Possibly, some individualized questions will linger as to circumstances unique to specific accounts, but at this stage that possibility pertaining to a relatively small corner of this case does not predominate over centerpiece, class-wide issues like whether a violation of Section 2954.8 incurs class-wide liability and whether Home Owners' Loan Act preemption will continue to preempt such liability. If individualized questions come into greater focus as this litigation continues to the point that they become unmanageable or threaten to overwhelm class-wide issues, the class can be decertified. At this point, however, this order concludes that class-wide issues predominate over individualized questions as required by Rule 23(b)(3).

To repeat, where, as here, "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc.*, 136 S. Ct. at 1045. In other words, Flagstar is free to raise all these challenges to the merits of plaintiff Kivett's theories. But they do not undermine plaintiff Kivett's showing for purposes of class certification at this stage.

In sum, this is a classic and textbook issue of the class action device. The law required interest to be paid but the savings association did not do so to its borrowers, all allegedly cheated by the savings association. These borrowers now join together to vindicate their right to interest under the law. The miscellaneous differences thrown out by the savings association are just that — miscellaneous — and cannot obfuscate the main point that the savings association allegedly *cheated* thousands of borrowers out of the interest due to them and pocketed the money for itself. It is hard to imagine a case more worthy of class treatment.

### 3. MOTION TO INTERVENE.

Once a district court has established a deadline for amended pleadings under Rule 16(b), any modification must be based on a showing of good cause. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Such good cause has been shown here. The Bravos contacted plaintiff's counsel on July 11, 2019 (Fredman Decl. ¶ 7) (Dkt. No. 83). By July 24, plaintiff's counsel had confirmed the Bravos's status as current Flagstar customers who had not received interest on their escrow accounts, entered into a retainer agreement, and served a notice-to-cure letter as required by the Bravos's deed of trust (*id*. ¶¶ 8–10). Plaintiff provided Flagstar three weeks to respond to the letter, Flagstar did not respond, and plaintiff brought the motion to intervene on August 20 (Dkt. No. 81). Plaintiff's counsel diligently sought this amendment.

Flagstar first argues that adding the Bravos would be prejudicial because it would require an internal investigation and the potential for additional discovery, in addition to further class certification briefing. None of these reasons show prejudice to Flagstar because these are both actions that Flagstar would have had to take had the Bravos began the action as plaintiffs. Flagstar has not shown any additional prejudice beyond normal litigation. The prejudice Flagstar props up does not suffice to turn the Bravos away. Moreover, the Bravos have already provided Flagstar all their mortgage related documents, and have offered to appear for deposition upon request.

Flagstar next argues that amendment would be futile because this proposed class can never seek prospective injunctive relief. Under Flagstar's theory, not every class member is a current Flagstar customer and so because the entire class cannot be entitled to injunctive relief, no class can be entitled to injunctive relief.

This argument also fails. Even assuming Flagstar's argument to be true, a separate sub-class under Rule 23(b)(2) can be certified for all class members who are currently serviced by Flagstar. For these reasons, plaintiff Kivett's motion to intervene and for leave to amend the complaint is **GRANTED**.

**CONCLUSION**

To the extent stated herein, plaintiff's motion for class certification is **GRANTED**. The following class is **CERTIFIED**:

> All persons who on or after April 18, 2014 had mortgage loans serviced by Flagstar Bank FSB ("Flagstar") on 1–4 unit residential properties in California and paid Flagstar money in advance to hold in escrow for the payment of taxes and assessments on the property, for insurance, or for other purposes relating to the property, but did not receive interest on the amounts held by Flagstar in their escrow accounts (excluding, however, any such persons whose mortgage loans originated on or before July 21, 2010) (the "Class").

This class definition shall apply for all purposes, including settlement. This class is certified as to plaintiff Kivett's Section 17200 claim, except for prospective injunctive relief. William Kivett is hereby **APPOINTED** as class representative. Plaintiff's counsel from Hagens Berman Sobol Shapiro LLP and the Law Office of Peter Fredman PC are hereby **APPOINTED** as class counsel.

Plaintiff's motion for new plaintiffs to intervene and for leave to amend to add new class representatives is provisionally **GRANTED**. Defendant shall have until **JANUARY 2, 2020** to **SHOW CAUSE** why the Bravos should not be authorized to co-represent the class. Plaintiff's counsel shall promptly make the Bravos available for depositions on or before **DECEMBER 6, 2019**, and shall produce their records by that date. By **JANUARY 2, 2020** both sides shall submit a proposed form of notice to the class with a plan of distribution by first-class mail.

Plaintiff also moved for an extension on the deadline to bring dispositive motions. To the extent stated, that motion is **GRANTED IN PART**. The deadline on dispositive motions is hereby set for **DECEMBER 5, 2019**. All other deadlines remain in place.

**IT IS SO ORDERED.**

Dated: November 20, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE